IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re:<br><br>**COREY BARNETTE,**<br><br>　　　　　Debtor. | **Case No. 24-00111-ELG**<br><br>**Chapter 12** |

### U.S. TRUSTEE'S MOTION TO DISMISS CHAPTER 12 CASE

Gerard R. Vetter, Acting United States Trustee for Region 4, by counsel, moves this Court to dismiss this chapter 12 case as the debtor is ineligible to proceed in bankruptcy before this honorable court. Specifically, the case should be dismissed for one of two reasons: first, the debtor's source of income comes from a marijuana cultivation facility located in the District of Columbia; and second, the debtor is ineligible to be considered a "family farmer" under 11 U.S.C. § 101(18).

In support of this motion the following representations are made:

1.　　The Court has authority to hear and decide this matter. 28 U.S.C. § 1334.

2.　　This is a core matter. 28 U.S.C. § 157(b)(2)(A).

3.　　On April 14, 2024, the Debtor filed a petition for relief under chapter 12 of the Bankruptcy Code. Doc. No. 1. The filing also included the majority of the Debtor's schedules, excepting Schedules I and J, and a statement entitled "Disclosure Concerning Marijuana Interests" ("Disclosure").

Michael T. Freeman
Asst. United States Trustee
Office of the United States Trustee
1725 Duke St., Suite 650
Alexandria, VA 22314
(703) 557-7274- Direct Dial
(202) 934-4174 – Office Cell
michael.t.freeman@usdoj.gov

1

4.  The Disclosure states that "Mr. Barnette derives an income from his ownership interest in a licensed marijuana cultivation facility in the District of Columbia. Mr. Barnette has also historically owned an interest in a marijuana dispensary, though the dispensary is now closed and non-operational in nature." Doc. No. 1, pp. 9-10.

5.  The Debtor filed his Schedule I and J on May 1, 2024. Doc. No.16. The Debtor states that he is employed as the Director of District Growers, LLC ("DGL"), receiving net income of $4,000.00 per month. The Debtor's non-filing spouse is employed with LMI, receiving gross income of $14,583.32 per month, with net income of $10,040.94 after deductions. The Debtor and non-filing spouse's income show that the majority of same comes from the non-filing spouse, who earns approximately 2.5 times the Debtor on net income and more than 3 times the Debtor on gross income.

6.  Based on the Disclosure, the Debtor does not dispute that his business is solely predicated on and involves marijuana. The Debtor violated federal narcotics laws through the ownership of the marijuana cultivation facility, and through the ownership of the prior dispensary.

7.  The Debtor asserts that the cultivation of marijuana is legal in the District of Columbia pursuant to D.C. Code § 7-1671.06. While not explicitly stated, the Debtor's assertion is presumed to be that, because marijuana is legal in the District of Columbia, it is therefore permissible to be in bankruptcy in the District of Columbia.

8.  The Bankruptcy Code at 11 U.S.C. § 1208(c) provides that, on request of a party in interest, the Court may dismiss a case filed under this chapter for cause. While 11 U.S.C. § 1208(c) enumerates ten reasons which may constitute cause to dismiss a Chapter 12 petition, these ten reasons are not an exhaustive list and a court may dismiss a Chapter 12 petition if a multiplicity of

2

factors exist. *In re Euerle Farms, Inc.*, 861 F.2d 1089, 1091 (8th Cir. 1988); *In re French*, 139 B.R. 476, 483 (Bankr. D.S.D. 1992).

9. At the time of filing this Motion, the Debtor is ineligible to proceed in this bankruptcy for two reasons.

   a. The Debtor's business violates federal narcotics law, and thus the Debtor is not eligible to receive relief through the bankruptcy process.

   b. The Debtor is ineligible to be considered a family farmer as the debts listed in the schedules are not related to the alleged farming operation.

### Argument

**A.    The Court Has Cause to Dismiss or Convert This Bankruptcy Case.**

The Court, for cause, after notice and hearing, may dismiss a case for cause. 11 U.S.C. § 1208(c). The statute provides a list of ten non-exhaustive reasons for cause. Further, if there is a showing of a fraud in connection with the case, the Court may consider conversion to Chapter 7. 11 U.S.C. § 1208(d). The U.S. Trustee is specifically seeking dismissal of this case based on the marijuana issue which highlights this proceeding.

**B.    The Debtor is Ineligible to Proceed in Bankruptcy as the Debtor Derives his Income from a Marijuana Business.**

Marijuana is a Schedule I controlled substance under the federal Controlled Substances Act ("CSA"), 21 U.S.C. § 801, et seq. The CSA broadly provides that possessing, growing, and dispensing marijuana and assisting others to do so are illegal. *See* 21 U.S.C. §841(a)(1). Further, 21 U.S.C. § 856(a) makes it unlawful to "knowingly open, lease, rent, use, or maintain any place" to manufacture or distribute a controlled substance. It is also a crime to conspire to violate the CSA. *See* 21 U.S.C. § 846.

And, even though several states, including the District of Columbia, have legalized marijuana for medicinal or recreational purposes, federal law continues to make it illegal to

3

engage in marijuana activities prohibited by the CSA or to conspire to violate the CSA. *Gonzales v. Raich,* 545 U.S. 1, 29 (2005) (holding that the CSA is a valid exercise of federal power under the Commerce Clause and thus supersedes state law authorizing medical marijuana).

The Debtor does not dispute the nature of his business. DGL is a marijuana cultivation facility which derives its income from the growth and sale of marijuana. Instead, the Debtor argues that because the District of Columbia legalized the growth of marijuana on a state level, that legalization also justifies or supports that the District of Columbia Bankruptcy Court can apply federal laws and provide him with relief under the Bankruptcy Code. Debtor's Disclosure states that there is no D.C. controlling case law which addresses whether a debtor working in the marijuana industry is barred from utilizing the bankruptcy process, and while not explicitly stated, the argument of the Debtor is allegedly that the D.C. Code, because it was enacted by Congress, is therefore federal law.

This argument is misplaced. The question raised is not a unique or new one. In a 1984 ruling, the D.C. Circuit Court of Appeals stated that "[w]hen Congress acts as the local legislature for the District of Columbia and enacts legislation applicable only to the District of Columbia and tailored to meet specifically local needs, its enactments should—absent evidence of contrary congressional intent— be treated as local law, interacting with federal law as would the laws of the several states." *District Properties Assocs. v. District of Columbia,* 743 F.2d 21, 27 (1984).

Looking even more granular, the D.C. Metro Police itself provides that marijuana is federally prohibited in the District of Columbia:

> **Enforcement by federal law enforcement agencies.**
>
> Although the District of Columbia has decriminalized possession of up to two ounces of marijuana for persons over the age of 21, federal law continues to prohibit the possession or use of any amount of marijuana. As a result, federal law enforcement officers may arrest anyone in the District of Columbia for possession or use of any amount of marijuana as a violation of federal law.

The Facts on DC Marijuana Laws, D.C. Metropolitan Police, https://mpdc.dc.gov/marijuana.

Contrary to Debtor's assertion, this is not a novel concept or new issue. Bankruptcy proceedings are "inherently proceedings in equity," *Pepper v. Litton*, 308 U.S. 295, 304-05 (1939), and a court in equity ordinarily should not "lend its judicial power to a plaintiff who seeks to invoke that power for the purpose of consummating a transaction in clear violation of law." *See Johnson v. Yellow Cab Transit Co.*, 321 U.S. 383, 387 (1944); *see also*, *In re Rent-Rite Super Kegs W. Ltd.*, 484 B.R. 799, 806 (Bankr. D. Colo. 2012) (dismissing chapter 11 case of debtor who leased commercial space to a marijuana grow operation).

More specifically, bankruptcy courts should avoid undue entanglement and promotion of conduct violating federal drug laws, laws which they have sworn to uphold. In the *Way to Grow* case, the Colorado District Court affirmed the bankruptcy court's dismissal of a debtor's bankruptcy case because of its involvement in the illegal marijuana trade. The District Court summarized that it "is frankly inconceivable that Congress could have ever intended that federal judicial officials could, in the course of adjudicating disputes under the Bankruptcy Code, approve a reorganization plan that relies on violations of federal criminal law." *In re Way to Grow*, 610 B.R. 338, 346 (D. Colo. 2019). Similarly, the bankruptcy court in *Johnson* cautioned that "federal judicial officers take an oath to uphold federal law and countenancing the Debtor's continued operations of his marijuana business under the court's protection is hardly consistent with that oath." *In re Johnson*, 532 B.R. 53, 56 (Bankr. W.D. Mich. 2015). The Tenth Circuit BAP in *Arenas* highlighted judges' oaths to uphold federal law as a critical factor in upholding dismissal

of the case (stating debtors are caught between a business the state deems legal "but which the laws of the United States—laws that every United States Judge swears to uphold—proscribe and subject to criminal sanctions."). *In re Arenas*, 535 B.R. 845, 854 (B.A.P. 10th Cir. 2015) (*Arenas II*). And the bankruptcy court in *Basrah Custom Design* stated that "a federal court cannot be asked to enforce the protections of the Bankruptcy Code in aid of a Debtor whose activities constitute a continuing federal crime . . . ." *In re Basrah Custom Design, Inc.*, 600 B.R. 368, 379 (Bankr. E.D. Mich. 2019 (citation and internal punctuation omitted).[1]

The concern regarding a bankruptcy court's promotion of CSA illegality in reorganization cases, providing cause for dismissal, arises in a broad spectrum of factual contexts, including for aiding and abetting CSA violations. In the *Way to Grow* case, the District Court of Colorado upheld the bankruptcy court's dismissal of one of three debtors, Pure Agro, based on its intended aiding and abetting of CSA violations. 610 B.R. at 353. Two of the three jointly administered debtors in *Way to Grow* sold equipment and supplies to persons and entities knowing that the equipment and supplies would be used to grow marijuana. The third debtor, Pure Agro, was the parent holding company for the first two. *See id.* at 342. The bankruptcy court dismissed all three debtors' cases based on their violations of 21 U.S.C. § 843(a)(7). On appeal, the district court affirmed the bankruptcy court, but, with respect to Pure Agro, "for a slightly different reason evident in the record." *Id.* at 340. Pure Agro's "*purpose* [was] to support its subsidiaries in their efforts to sell to customers whom the subsidiaries and Pure Agro [knew] to be using the products [in violation of the CSA]." *Id.* at 354 (emphasis in original). And thus, "[t]he evidence before

---

[1] The federal courts' refusal to intervene on behalf of a litigant engaged in illegal conduct is not limited to bankruptcy cases. Federal courts have repeatedly refused to entertain cases arising from illegal conduct such as gambling, drug trafficking, and accepting kickbacks. *See e.g.*, *United States v. Acme Process Equipment Co.*, 385 U.S. 138 (1966), *reh'g den*ied 385 U.S. 1032; *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612, 1633 (2018) (Thomas, concurring). *See generally* McNichols, *The New Highwayman: Enforcement of U.S. Patents on Cannabis Products*, 101 J. Pat. & Trademark Off. Soc'y 24, 46 (2019). *See, e.g.*, *Polk v. Gontmakher*, 2019 WL 4058970 *2 (D.Ct. W.D. WA August 28, 2019) (dismissing action seeking to enforce a purported ownership interest in a marijuana business).

6

the bankruptcy court was enough to support a finding that Pure Agro aids and abets its subsidiaries' violations of federal law" warranting dismissal. *Id.* at 353 (citing the 18 U.S.C. § 2(a)).

In *In re Burton*, 610 B.R. 633 (9th Cir. B.A.P. 2020), the Ninth Circuit Bankruptcy Appellate Panel affirmed the dismissal of a chapter 13 case involving the administration of proceeds from debtor's ownership in a cannabis related enterprise. Even though the business venture was no longer operating an illegal marijuana business, the bankruptcy court found that in its breach of contract lawsuit the debtors were still seeking to recover funds attributable to a contract under which the business grew, cultivated, or sold marijuana, *id.* at 636, and "[a]ny recovery from the litigation would be derived from conduct that is illegal under federal law." *Id.* Thus, any distribution to the Burtons "would also be derived from illegal conduct," *id.,* and "neither a case trustee, nor these Debtors, can sell or liquidate the . . . ownership interest in Agricann, which is property of this estate through the bankruptcy case" because "[t]his would necessitate the Court and the Trustee's involvement in condoning the illegal activity." *Id.* at 636-37.

And in *Basrah Custom Design,* the chapter 11 debtor sought to use the bankruptcy court to set aside one illegal contract to operate a marijuana dispensary for a better illegal contract to do the same. *In re Basrah Custom Design Inc.*, 600 B.R. 368. In dismissing the debtor's bankruptcy, the *Basrah* court stated that it could not be used to violate federal law:

> The actual purpose of filing and prosecuting this bankruptcy case is for the Debtor and its 100% shareholder to use this bankruptcy court, and the Bankruptcy Code, to assist them in obtaining a result that is contrary to federal criminal law under the Controlled Substances Act, and therefore contrary to federal public policy.
>
> This federal court cannot allow itself to be used in this way.

*Id.* at 383.

The Debtor's business involves marijuana in multiple ways. First, and undisputed, the Debtor is deriving the majority of his portion of the income from a marijuana cultivation facility.

7

Second, the Debtor previously operated a dispensary, and it is unclear how this may be involved in any proceeding or reorganization, or if any of the debts arose from the operation of that business. Third, the main creditor and the crux of the reason for the filing of this case is Baruck Bros Investments, LLC, et al., scheduled as Claim 4.2, in the amount of $1,050,000, which debt, upon information and belief, arose from a separate marijuana business venture unrelated to either DGL or the prior dispensary. The involvement of marijuana in the Debtor's business is sufficient cause to dismiss this case and the Court should not be used to assist in the reorganization of a federally prohibited business.

### C. The Case was filed in Bad Faith due to the use of Bankruptcy Proceedings While Continuing to Violate Federal Law.

Filing a case in bad faith is cause to dismiss or convert. *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 373 (2007). A debtor acts in bad faith by asking a federal court for permission to continue to violate federal law. *In re Rent Rite Super Kegs West Ltd.*, 484 B.R. at 807 ("[U]nder no circumstance can the Court place itself in the position of condoning the Debtor's criminal activity by allowing it to utilize the shelter of the Bankruptcy Code while continuing its unlawful practice of leasing space to those who are engaged in the business of cultivating a Schedule I controlled substance."). In this context, good faith is an objective, not subjective, standard. *Arenas II*, 535 B.R. at 852-53 (affirming dismissal over requested conversion to chapter 13; even though debtors were "sincere and credible" because good faith is objective, not subjective, it is "objectively unreasonable for them to seek Chapter 13 relief."). Simply put, "it is not asking too much of debtors to obey federal laws, including criminal laws, as a condition of obtaining relief under the Bankruptcy Code." *In re Johnson*, 532 B.R. 53, 59 (Bankr. W.D. Mich. 2015).

The Debtor filed this case in bad faith. The Debtor owns a marijuana cultivation facility, an illegal enterprise under federal law, and is seeking to use the Bankruptcy Court to further his illegal enterprise. In bringing his two-party dispute into the bankruptcy court, the Debtor knew

8

that he would rely on the Bankruptcy Court to either fund a plan from the proceeds derived from unlawful sources, or to use this Court in his negotiation tactics with the main creditor. The Court should not assist the Debtor to reorganize for this purpose. *See Johnson v. Yellow Cab Transit Co.*, 321 U.S. 383, 387 (1944) ("[B]ecause of the clean hands doctrine a federal court should not, in an ordinary case, lend its judicial power to a [party] who seeks to invoke that power for the purpose of consummating a transaction in clear violation of law.").[2]

### D. The Debtor is Ineligible to Proceed as a Family Farmer.

The Debtor, in his petition, has elected to proceed as a Chapter 12 case, arguing that he is a family farmer under 11 U.S.C. § 101(18)(A):

> The term "family farmer" means—
>
> **(A)** individual or individual and spouse engaged in a farming operation whose aggregate debts do not exceed $10,000,000 [1] and not less than 50 percent of whose aggregate noncontingent, liquidated debts (excluding a debt for the principal residence of such individual or such individual and spouse unless such debt arises out of a farming operation), on the date the case is filed, arise out of a farming operation owned or operated by such individual or such individual and spouse, and such individual or such individual and spouse receive from such farming operation more than 50 percent of such individual's or such individual and spouse's gross income for—
>
> > **(i)** the taxable year preceding; or
> >
> > **(ii)** each of the 2d and 3d taxable years preceding;
> > the taxable year in which the case concerning such individual or such individual and spouse was filed; or

---

[2] The Ninth Circuit's decision in *Garvin v. Cook Investments NW, SPNWY, LLC*, 922 F.3d 1031 (9th Cir. 2019) ("we conclude that § 1129(a)(3) directs courts to look only to the proposal of a plan, not the terms of the plan"), does not compel a different result. Although the court in *Cook* ruled that the United States Trustee's motion to dismiss had been waived by not being renewed at plan confirmation, it nevertheless stated that motions to dismiss for cause remain viable even if a proposed plan may satisfy the confirmation standard: "We do not believe that the interpretation compelled by the text will result in bankruptcy proceedings being used to facilitate legal violations. To begin, absent waiver, as in this case, courts may consider gross mismanagement issues under § 1112(b)." *Id.* at 1036.

9

While not waiving any of the prior arguments, and explicitly not waiving whether or not a marijuana cultivation facility qualifies as a farm, the Debtor is incorrect in his interpretation of the qualifications to be deemed a 'family farmer.' "A court may not strain Bankruptcy Code definitions in order to grant statutory family farmer status to entities not squarely fitting Bankruptcy Code requirements." *In re Cloverleaf Farmer's Coop.,* 114 B.R. 1010, 1013 (Bankr. S.D. 1990) (citations omitted).

> **i.    *Debtor's Debts Do Not Arise from the Alleged Farming Operation***

Debtor filed most of his Schedules with the original petition, which included his Schedules D and E/F. On Debtor's Schedule D, secured creditors included 2 vehicle debts and the secured loan on the primary residence, totaling $725,305.60. Debtor's Schedules E/F include six creditors totaling $1,135,549.40, the bulk of which is held by Baruck Bros. Investments, LLC as a result of a judgment in the amount of $1,050,000.00 related to a proceeding in Monterey County Superior Court, Case No. 20-CV-001316, which is listed as concluded in the Statement of Financial Affairs. The Debtor has provided limited information to date, but the understanding is that this judgment arose out of the Debtor's personal liability for another business venture, The Tribe Companies, LLC ("Tribe"), and its lease obligations.

Tribe was a company founded in 2017 when the Debtor himself filed organization papers with the state of California. While the company was suspended in March of 2021, it was revived in October of that same year. Notably, the Debtor failed to disclose his ownership interest in Tribe despite being the signatory on the formation documents and being listed as one of the two remaining members, along with Gregory Burnette, when the company documents were amended in August of 2022. Further, those documents listed that the Debtor was the CEO of the company:

10

| Chief Executive Officer (CEO) | |
|---|---|
| CEO Name | CEO Address |
| ■ Corey Barnette | 25 OAK PLACE KERNVILLE, CA 93238 |

In order to be eligible to be a family farmer, the Debtor's aggregate debts cannot exceed $10,000,000 and not less than 50% of those noncontingent, liquidated debts must have arisen from a farming operation owned or operated by such individual or such individual and spouse. The bulk of the debt in this case is the Baruck Bros judgment and the Debtor's personal liability, which did not arise from a farming operation but instead arose from a lease default on a separate business venture.

Separately, and in addition to the above, it is important to note that the Debtor failed to even disclose his ownership and CEO position in Tribe. The failure to disclose this business and his role in same is further evidence of the bad faith filing by the debtor.

**E. Dismissal is the Appropriate Remedy.**

Dismissal is the appropriate remedy in this particular case as, at the time of this Motion, the U.S. Trustee has not made any allegations of fraud such to trigger the conversion option under 11 U.S.C. § 1208(d). The basis for this motion and the case – revolving around a marijuana cultivation business – further complicates matters, in that, even if there were a fraud allegation being relied upon (and without waiving the non-disclosure of the Debtor's role and ownership in Tribe), the case could not be converted. The conversion of this case to one under Chapter 7 would impose on the Chapter 7 trustee the duty to "collect and reduce to money" the estate's assets. 11 U.S.C. § 704(a)(1). However, bankruptcy trustees must comply with applicable non-bankruptcy regulations regarding public health and safety in administering the estate. *Midlantic Nat. Bank v. New Jersey Dep't of Envtl. Prot.*, 474 U.S. 494, 502 (1986). The CSA is a non-bankruptcy

11

regulation promoting public health and safety. 21 U.S.C. § 801(2) ("The Congress makes the following findings and declarations . . . [t]he illegal importation, manufacture, distribution, and possession and improper use of controlled substances have a substantial and detrimental effect on the health and general welfare of the American people.").

The Debtor is the director and majority owner of a marijuana cultivation facility, and previously owned a marijuana dispensary. As discussed by the panel in *In re Burton* and the cases referenced therein, a trustee would be unable to collect or distribute these types of assets without violating the CSA. 610 B.R. at 640-41 ("The Burtons failed to demonstrate that their ties to Agricann would not result in proceeds of an illegal business becoming part of the bankruptcy estate, requiring the trustee and the court to administer assets that constitute proceeds of activity criminalized by the CSA. Under the facts presented, the bankruptcy court did not abuse its discretion in dismissing the case for that reason."). Because the CSA promotes public health and safety, the trustee's duty to administer the estate must yield to the CSA's restrictions. *See also In re Medpoint Management*, LLC, 528 B.R. at 185. Thus, a trustee would be unable to administer the estate's assets.

Further, administration of the estate's assets, such as selling marijuana, would subject the Chapter 7 trustee to criminal liability. The inability to administer the estate lawfully compels its dismissal. *See, e.g.*, *In re Arenas*, 514 B.R. 887, 892 (Bankr. D. Colo. 2014) ("The impossibility of lawfully administering the Debtors' bankruptcy estate under chapter 7 constitutes cause for dismissal of the Debtors' case under 11 U.S.C. § 707(a)."), *aff'd Arenas II*, 535 B.R. 845 (B.A.P. 10th Cir. 2015); *In re Vel Rey Properties, Inc.*, 174 B.R. 859, 866 (Bankr. D.D.C. 1994) ("[B]ankruptcy is not intended to be a haven for law breakers. If the debtor cannot be liquidated or reorganized in compliance with state laws, then bankruptcy is not the place for the debtor.").

Restating the arguments above, the Debtor is ineligible to be considered a family farmer as the debts do not arise from any farming operation, continues to violate federal law in the operation of the marijuana related business, has filed this case in bad faith while continuing to violate federal law, and is ineligible for bankruptcy relief as the income is derived from a marijuana related business.

WHEREFORE, the United States Trustee respectfully requests that this Court enter an order dismissing this case.

May 30, 2024

GERARD R. VETTER
ACTING U.S. TRUSTEE, REGION 4


By: */s/ Michael T. Freeman*
Michael T. Freeman, Asst. U.S. Trustee
VA Bar No. 65460
Office of the United States Trustee
1725 Duke St., Suite 650
Alexandria, VA 22314
(703) 557-7274- Direct Dial
michael.t.freeman@usdoj.gov

**Certificate of Service**

       I hereby certify that on May 30, 2024, I electronically filed the foregoing Motion to Dismiss with the Clerk of the Court and served it via the Court's CM/ECF system upon all counsel who have entered an appearance in the case:

Michael T. Freeman michael.t.freeman@usdoj.gov, robert.w.ours@usdoj.gov

Rebecca A. Herr ecf@ch13md.com

Mark Meyer bankruptcy@rosenberg-assoc.com, bankruptcy@rosenberg-assoc.com

U. S. Trustee for Region Four USTPRegion04.DC.ECF@USDOJ.GOV

Maurice Belmont VerStandig mac@mbvesq.com, lisa@mbvesq.com; mac@dcbankruptcy.com; verstandig.mauricer104982@notify.bestcase.com;verstandiglaw@recap.email

       I FURTHER CERTIFY that on May 30, 2024, a copy of the Motion was served by first class mail, postage prepaid, to:

Capital One Auto Finance, a division of Capital One, N.A.
c/o AIS Portfolio Services, LLC
4515 N Santa Fe Ave. Dept. APS
Oklahoma City, OK 73118

                                              */s/ Robert W. Ours*
                                              Robert W. Ours
                                              Paralegal Specialist