Maurice B. VerStandig, Esq.
Bar No. MD18071
The Belmont Firm
1050 Connecticut Avenue, NW
Suite 500
Washington, DC 20036
Phone: (202) 991-1101
mac@dcbankruptcy.com
*Counsel for*
*Corey Barnette*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | Case No. 24-111-ELG |
| | ) | (Chapter 12) |
| COREY BARNETTE | ) | |
| | ) | |
| Debtor. | ) | |

**MOTION TO EXTEND TIME UNDER RULE 9027**

Comes now Corey Barnette ("Mr. Barnette" or the "Debtor"), by and through undersigned counsel, pursuant to Federal Rule of Bankruptcy Procedure 9006(b), and moves to extend the time to remove the matter of *Barnette, et al. v. McElfresh, et al.* (the "State Court Litigation") from the Monterey County Superior Court to the United States District Court for the Northern District of California,[1] and in support thereof states as follows:

**I.     Introduction**

Mr. Barnette, through counsel, is working to propose a Chapter 12 plan that will be funded, in significant part, through pursuit of the State Court Litigation. While the Debtor's income is somewhat sparse, and will only serve to make limited monies available to creditors over a three

---

[1] Pursuant to General Order No. 24 of the United States District Court for the Northern District of California, all bankruptcy cases (including adversary proceedings) are referred to the United States Bankruptcy Court for the Northern District of California. So while removal would technically be to the district court, such would be in form only, with the removed case being docketed in the bankruptcy court.

1

year commitment period, 11 U.S.C. § 1222(c), the State Court Litigation is believed to be markedly valuable, representing a professional negligence claim that could deliver several hundred thousand dollars—if not more—to creditors. And, in that regard, it will be most sensible to remove the State Court Litigation and then seek a transfer of the matter to this Honorable Court, to permit the case to be adjudicated as an adversary proceeding.

Yet, as this Honorable Court is well aware, more than mere plan confirmation stands between the status quo and pursuing litigation for the benefit of creditors. The United States Trustee (the "US Trustee") has filed a motion seeking to dismiss this bankruptcy proceeding on the alternative theories that (i) a marijuana-centric case cannot be administered; and (ii) Mr. Barnette is not a "family farmer." *See* U.S. Trustee's Motion to Dismiss Chapter 12 Case, DE #21 (the "Motion to Dismiss").

Mr. Barnette's opposition to the Motion to Dismiss is not due until July 25, 2024, DE #21-1, but—unsurprisingly—is likely to be relatively intricate, raising both constitutional issues and at least one argument of first impression vis a vis the construction of Section 101(18) of Title 11 of the United States Code. A hearing is scheduled for August 1, 2024, *Id.*, and, though likely non-evidentiary, is almost certain to be substantively complex and more nuanced than many oral arguments on motions to dismiss bankruptcy cases. Whether or not the issue is then taken under advisement is, of course, a question charged solely to this Honorable Court's discretion, but context and experience both at least suggest the novel issues may be meritorious of written consideration.

In the interim, it makes little sense to remove the State Court Litigation. While Mr. Barnette is confident that he will both succeed on the Motion to Dismiss and see a plan confirmed, he is also not so brash as to assume either eventuality to be *fait accompli*. The US Trustee has filed a

2

detailed, well-written motion and the issues are not overtly simplistic in nature. Allowing the Motion to Dismiss to be resolved, and a plan to be confirmed, before the State Court Litigation is removed, would be the most prudent and judicially-economical course of action. There is little sense in employing special counsel to remove a case in California, and to seek a transfer to this venue,[2] when so much remains to be done before a plan can be confirmed.

For these reasons, and as extrapolated upon *infra*, it is respectfully urged the deadline in Federal Rule of Bankruptcy Procedure 9027(a)(2) be extended to a date 30 days after the entry of a confirmation order herein.

## II.    Standard

The Federal Rules of Bankruptcy Procedure allow for the enlargement of court-imposed deadlines "for cause shown." Fed. R. Bankr. P. 9006(b)(1). As noted in connection with an analogous provision of the Federal Rules of Civil Procedure, the standard "is not a high bar, but it does require some reasonable explanation for the party's delay." *Andrews v. Daughtry*, 994 F. Supp. 2d 728, 735 (M.D.N.C. 2014) (citing *Stanley v. Huntington Nat. Bank*, 492 Fed. Appx. 456 (4th Cir. 2012); *U.S. Home Corp. v. Settlers Crossing, LLC*, 2012 WL 3536691, at *17 (D. Md. Aug. 14, 2012); *Bonds v. Electrolux Home Prod., Inc.*, 2006 WL 3955825, at *3–4 (D. S.C. Dec. 6, 2006); *Strickland v. Alewine*, 2010 WL 679607, at *1 (D.S.C. Feb. 24, 2010)).

## III.    Argument: An Extension of Time is Appropriate

There are two complementary reasons an extension of time is appropriate in this case: (i) the posture of Mr. Barnette's bankruptcy is sufficiently *sui generis* as to support an elongation of

---

[2] Insofar as undersigned counsel is not licensed to practice law in California, special counsel would be needed, even if only to file a notice of removal and to sponsor a motion for admission *pro hac vice* in the Northern District of California. Undersigned counsel would, however, very likely assume the role of litigation counsel in the State Court Litigation once transferred to this venue.

3

normative timelines; and (ii) the act of removing a case from a state court 2,906 miles away is sufficiently laborious as to also merit an elongation of normative timelines. In a vacuum, it may be harder to justify a lengthier removal period for a prototypical single asset real estate Chapter 11 case, or for litigation pending around the corner in the District of Columbia Superior Court. But taken together, these realities create a compelling rationale more than sufficient to clear the burden referenced by the *Andrews* Court.

As a starting point, the State Court Litigation is a negligence claim tethered to the formation—and business affairs—of a marijuana-centric entity. And while that does not create a precise overlap with the issues raised in the Motion to Dismiss, it stands to reason that a ruling on the permissibility of this bankruptcy case as a whole will, too, be dispositive on the permissibility of bringing a marijuana-adjacent tort case into this Honorable Court.

More plainly, though, the jurisdictional foundation of the State Court Litigation will turn on the disposition of the Motion to Dismiss. As this Honorable Court has recently had occasion to observe:

> . . . a bankruptcy court's discretion is not unfettered and the court may not retain subject matter jurisdiction over an adversary proceeding if it does not have subject matter jurisdiction after the dismissal of the underlying bankruptcy case. In a case where an adversary proceeding is based solely upon state court causes of action, once the main bankruptcy case is dismissed, a bankruptcy court must conduct a thorough analysis of subject matter jurisdiction in considering whether to exercise its discretion to retain jurisdiction over the remaining adversary proceeding. . . .
>
> Courts have identified multiple factors for bankruptcy courts to consider when conducting an analysis as to whether it has subject matter jurisdiction over an adversary proceeding post-dismissal of an underlying bankruptcy case, including: (i) judicial economy; (ii) fairness and convenience to the parties; (iii) the degree of difficulty of the related legal issue involved; and (iv) whether the remedies sought by the plaintiff are unique bankruptcy remedies.

*Brooks v. Rosebar*, 2023 WL 2697939, at *8–9 (Bankr. D.D.C. Mar. 29, 2023) (citing *Bullock v. Simon (In re Bullock)*, 986 F.3d 733, 739 (7th Cir. 2021); *Johnson v. Smith (In re Johnson)*, 575

4

F.3d 1079, 1083 (10th Cir. 2009); *Chapman v. Currie Motors, Inc.*, 65 F.3d 78, 81–82 (7th Cir. 1995); *Dells Land & Cattle Co. II, LLC v. Krus (In re Krus)*, 2020 WL 6948160, 19-48 (Bankr. W.D. Wis. Oct. 23, 2020) (quoting *Rodriguez v. Volpentesta (In re Volpentesta)*, 187 B.R. 261, 270 (Bankr. N.D. Ill. 1995)); *Querner v. Querner (In re Querner)*, 7 F.3d 1199, 1201–02 (5th Cir. 1993)).

While Mr. Barnette certainly does not wish to take a determinative position as to a future posture that may well never come to pass, it would be naïve to not surmise that an adversary proceeding's jurisdictional integrity would be at least challenged by dismissal of the bankruptcy case. This is particularly so if the bankruptcy is dismissed because of the alleged impropriety of marijuana-centric disputes in federal court, when the State Court Litigation concerns a marijuana-centric business' formation and affairs. So prudence well dictates that there is reason in allowing the State Court Litigation to remain in state court until a ruling is made on the Motion to Dismiss in this Honorable Court.

Equally, the mere act of removal would be unusually strenuous in this case. Importing a case from the District of Columbia Superior Court is hardly a fanciful task, with most of the local bar having overlapping licenses and with the process being nearly as expedient as a stroll from one courthouse to the other. Even cases in the surrounding Maryland and Virginia suburbs are normally removable and transferred with little ado, as there are—similarly—overlapping licensures, and as the three bankruptcy courts within a short drive of one another are accustomed to adjudicating motions to transfer venue around the Beltway.

Here, however, special counsel will need to be hired on the other side of the country. That special counsel will then need to remove the State Court Litigation to the Northern District of California, Fed. R. Bankr. P. 9027(a)(1), and file therein a motion to transfer venue. If a hearing

is held, Mr. Barnette and/or undersigned counsel may well then need to board a flight to San Francisco, traverse to Monterey, and then make a return trip back east. Meanwhile, fees and expenses will be incurred along the way, all in a sum far greater than those occasioned by a jaunt to Greenbelt or Alexandria.

To be sure, this is an eminently navigable process. Removal and transfer will not be hard; they will just require more time, effort and money than they do in other contexts. But those added layers of effort certainly militate in favor of not undertaking the process until such a time as it is known that such will not be for naught. And that date will not arrive until the Motion to Dismiss is ruled upon and a Chapter 12 plan is confirmed.

The *Andrews* burden is "some reasonable explanation." It is respectfully suggested the foregoing meets that standard.

## IV. Conclusion

WHEREFORE, the Debtor respectfully prays this Honorable Court (i) extend the deadline to remove the State Court Litigation to a date 30 days from the date of entry of a confirmation order herein; and (ii) afford such other and further relief as may be just and proper.

Respectfully submitted,

Dated: July 12, 2024     By:     /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. MD18071
The Belmont Firm
1050 Connecticut Avenue, NW
Suite 500
Washington, DC 20036
Phone: (202) 991-1101
mac@dcbankruptcy.com
*Counsel for the Debtor*

*[Certificate of Service on Following Page]*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 12th day of July, 2024, a copy of the foregoing was served electronically upon filing via the ECF system.

/s/ Maurice B. VerStandig
Maurice B. VerStandig