Maurice B. VerStandig, Esq.
Bar No. MD18071
The Belmont Firm
1050 Connecticut Avenue, NW
Suite 500
Washington, DC 20036
Phone: (202) 991-1101
mac@dcbankruptcy.com
*Counsel for Corey Barnette*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | Case No. 24-111-ELG |
| | ) | (Chapter 12) |
| COREY BARNETTE | ) | |
| | ) | |
| Debtor. | ) | |

## CHAPTER 12 PLAN OF REORGANIZATION

Comes now Corey Barnette ("Mr. Barnette" or the "Debtor" or the "Plan Proponent"), by and through undersigned counsel, pursuant to Section 1221 of Title 11 of the United States Code, and proposes this Chapter 12 plan of reorganization (the "Plan").

**ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THIS PLAN IN ITS ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN. SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1227 OF THE BANKRUPTCY CODE, FEDERAL RULE OF BANKRUPTCY PROCEDURE 3015 AND IN THIS PLAN, THE DEBTOR RESERVES THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE OR WITHDRAW THIS PLAN PRIOR TO ITS SUBSTANTIAL CONSUMMATION.**

### INTRODUCTION

Mr. Barnette is the chief proprietor of a farm in the District of Columbia who, in concert with others, endeavored to expand his operation to California. Those efforts did not pan out, albeit only after Mr. Barnette and various colleagues became inadvertently liable on a large, long-term lease. With an ensuing judgment for more than $1 million now pending against the Debtor and his would-be partners, this Chapter 12 case was commenced—on April 14, 2024—to offer a mechanism through which Mr. Barnette may sensibly reorganize his affairs in a cogent and methodical manner. This Plan encompasses the heart of such efforts.

1

At core, there are two monetarily-relevant aspects to this Plan: (i) Mr. Barnette is able to earn *de minimis* monies from his operation of a licensed marijuana cultivation facility in the District of Columbia; and (ii) Mr. Barnette and his colleagues hold litigation rights (the "McElfresh Claim," as defined below) against a California law firm alleged to have been instrumental in the incursion of the outsized lease liability. These two pecuniary sources are radically different.

On the former front, the local farm helmed by Mr. Barnette is itself distressed. The proliferation of unlicensed marijuana distribution channels in the District of Columbia has eroded the once-robust value of licensed cultivation facilities, whilst simultaneously reducing demand for the end product. Two licensed dispensaries have recently closed their doors, alongside a competing cultivation center; the municipal government's apparent indifference toward the policing of unregulated marijuana sales is working a demonstrable prejudice upon licensed operators. So while Mr. Barnette will continue to draw monies from his operation (mostly—if not entirely—comprised of the repayment of funds he previously infused into the same operation), such will not be the chief source of monies used to finance this Plan.

The chief source, rather, will be the latter item referenced above: the McElfresh Claim. And, in that narrow regard, this resembles a liquidating plan in certain respects, with the Debtor looking to the strategic monetization of an extant asset (the McElfresh Claim) as a means of realizing monies to pay creditors. This also complicates matters somewhat, though, insofar as litigation rights are notoriously difficult to value; an expert can easily assign an expected value to the McElfresh Claim, but the standard deviations from that projection are, no doubt, significant in nature. Equally, while there is a sum for which Mr. Barnette would be willing to compromise the McElfresh Claim, there are self-evident reasons the Debtor does not wish to publish that sum on the docket of this case.

## ARTICLE I

## DEFINITIONS; RULES OF INTERPRETATION; COMPUTATION OF TIME

**1.1  Scope of Definitions.**  For purposes of the Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings assigned to them in Article I of the Plan.  Any term used herein that is not defined herein, but that is used in Title 11 of the United States Code (the "Bankruptcy Code") or the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.  Whenever the context requires, such terms shall include the plural as well as the singular number, the masculine gender shall include the feminine and the feminine gender shall include the masculine.

**1.2  Definitions.**

a.  "Administrative Claim" means all Claims that have been allowed pursuant to an order of the Bankruptcy Court and that are entitled to priority under sections 507(a)(2) or 507(b) of the Bankruptcy Code.

b.  "Administrative Claims Bar Date" means the last date for a person to file any applications or requests for payment of Administrative Claims and shall be specifically defined as the first business day next succeeding the thirtieth calendar day following the Confirmation Date.

c.  "Ballot" means the ballot, the form of which has been approved by the Bankruptcy Court, provided to each Holder of a Claim entitled to vote to accept or reject this Plan.

d.  "Business Day" means any day that is not a Saturday, a Sunday or "legal holiday" in the District of Columbia as such term is defined in Bankruptcy Rule 9006(a).

e.  "Cash on Hand" means any currency or deposits being held by the Debtor, or hereafter collected by the Debtor. The amount of the Cash on Hand is not possible to be known and will fluctuate due to payment of claims and post-petition recoveries.

f.  "Causes of Action" means, any and all claims, choses in action, causes of action suits, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payments and claims, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether assertable directly or derivatively, in law, equity or otherwise, which are owned or held by, or have accrued to, the Debtor, whether arising before or after the Petition Date, including, without limitation, those which are: (i) against any party that has filed a Claim herein; (ii) property of any Estate under and pursuant to Section 541 of the Bankruptcy Code; (iii) for subrogation and contribution; (iv) for turnover; (v) for avoidable transfers and preferences under and pursuant to Sections 542 through 550 and 553 of the Bankruptcy Code and applicable state law; (vi) to determine the extent, validity and priority of liens and encumbrances; (vii) for surcharge under Section 506(c) of the Bankruptcy Code; (viii) for subordination under Section 510 of the Bankruptcy Code; (ix) related to federal or state securities laws; (x) direct or derivative claims or causes of action of any type or kind; (xi) for professional malpractice against professionals employed by any Debtor; (xii) against any and all current and/or former officers and directors of any Debtor; (xiii) under and pursuant to any policies of insurance maintained by any Debtor; (xiv) for collection on accounts, accounts receivables, loans, notes receivables or other rights to payment; (xv) for the right to seek a determination by the Bankruptcy Court of any tax, fine or penalty relating to a tax, or any addition to a tax, under Section 505 of the Bankruptcy Code; (xvi) which arise under or as a result of any section of the Bankruptcy Code, including Section 362; (xvii) or may be available to any Debtor against any third party(ies) under any legal or equitable theory, whether or not specifically identified or described herein or in the Official Form 425A; and (xviii) to the extent not otherwise set forth above, as described in the Official Form 425A. "Causes of Action" shall *not* include the McElfresh Claim.

g.  "Claim" has the meaning ascribed in Section 101(5) of the Bankruptcy Code.

h.  "Class" means a category of Holders of Claims or Equity Interests as set forth in Article III of the Plan.

3

  i. "Confirmation" shall mean the entry of an order of the Bankruptcy Court confirming the Plan in accordance with Section 1225 of the Bankruptcy Code

  j. "Confirmation Date" means the date on which the Bankruptcy Court enters the Confirmation Order on its docket.

  k. "Confirmation Date Assets" means all Property of the Debtor as of the Confirmation Date (excluding assets previously distributed, abandoned, expended or otherwise disposed of by the Debtor prior to the Confirmation Date and not otherwise subject to recovery), including, without limitation, all Causes of Action and other Property existing as of the Petition Date and acquired by any or all of the Debtor during the pendency of this case under the Bankruptcy Code or otherwise.

  l. "Confirmation Hearing" means the hearing before the Bankruptcy Court pursuant to Section 1224 of the Bankruptcy Code to consider confirmation of this Plan.

  m. "Confirmation Order" means the order of the Bankruptcy Court confirming this Plan pursuant to Section 1225 of the Bankruptcy Code, as such order may be amended, modified or supplemented.

  n. "Creditor" has the meaning ascribed in Section 101(10) of the Bankruptcy Code and shall refer to any Holder of a Claim against any Debtor or Holder of any Claim against Property of Debtor as defined in Section 102(2) of the Bankruptcy Code.

  o. "Disclosure Statement" means the Disclosure Statement with respect to this Plan, as may be amended.

  p. "Distribution" means each distribution of Cash to Holders of Allowed Claims pursuant to and under the terms of this Plan by the Debtor on each Distribution Date.

  q. "Distribution Date" means the date(s) which Distributions shall be made pursuant to and under the terms of this Plan by the Debtor.

  r. "Effective Date" shall mean the date fourteen days after the Confirmation Date.

  s. "Equity Interest" means any ownership interest or share in the Debtor (including, without limitation all rights to obtain such an interest or share in any Debtor).

  t. "Estate" means the estate created in this case for the Debtor pursuant to Section 541 of the Bankruptcy Code.

  u. "File, Filed or Filing" means file, filed or filing with the Bankruptcy Court or its authorized designee in this Chapter 12 case.

  v. "Final Order" means an order or judgment of the Bankruptcy Court which has not been reversed, stayed, modified or amended and: (i) as to which the time to appeal or seek reconsideration or rehearing thereof has expired; (ii) in the event of a motion for reconsideration or rehearing is filed, such motion shall have been denied by an order or judgment of the Bankruptcy Court; or (iii) in the event of an appeal is filed and pending, a stay pending appeal has not been

entered; provided, however that with respect to an order or judgment of the Bankruptcy Court allowing or disallowing a Claim, such order or judgment shall have become final and non-appealable; and provided further, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or analogous rule under the Bankruptcy Rules, may be filed with respect to such order or judgment shall not cause such order or judgment not to be a Final Order.

  w. "General Unsecured Claim" means a Claim as of the Petition Date that is not an Administrative Claim, a Secured Claim, a Priority Claim or a Priority Tax Claim.

  x. "Holder" means a Person holding a Claim or any authorized agent who has completed, executed and delivered a Ballot in accordance with the applicable voting instructions.

  y. "Insider" has the meaning ascribed in Section 101(31) of the Bankruptcy Code.

  z. "Lien" means any mortgage, lien, pledge, security interest or other charge or encumbrance or security device of any kind affecting any asset or any property of the Debtor contemplated by Section 101(37) of the Bankruptcy Code.

  aa. "McElfresh Claim" means the Debtor's rights, at law and/or in equity, pursuable through the matter currently captioned as *Barnette, et al. v. McElfresh, et al.*, pending in the Monterey County Superior Court.

  bb. "Person" has the meaning ascribed in Section 101(41) of the Bankruptcy Code.

  cc. "Petition Date" means April 14, 2024, the date on which the Debtor commenced this case by filing a petition for relief pursuant to Section 301 of the Bankruptcy Code.

  dd. "Priority Claim" means a Claim to the extent that it is of the kind described in, and entitled to priority under Sections 507(a)(3), (a)(4), (a)(5), (a)(6), (a)(7) or (a)(9) of the Bankruptcy Code, that is not a Priority Tax Claim.

  ee. "Priority Scheme" shall mean the priorities for the payment of claims as set forth in 11 U.S.C. § 507.

  ff. "Priority Tax Claim" means a Claim of a governmental unit of the kind specified in Section 507(a)(8) of the Bankruptcy Code.

  gg. "Professional" means any professional employed or to be compensated pursuant to Sections 327, 328, 330, 331, or 503(b) of the Bankruptcy Code.

  hh. "Property" means all assets and property included within "property of the estate" as set forth in and within the meaning of Section 541 of the Bankruptcy Code.

  ii. "Schedules" means the Debtor's schedules of assets and liabilities and statement of financial affairs filed with the clerk of the Bankruptcy Court pursuant to Bankruptcy Rule 1007, as they have been or may be amended or supplemented from time to time in accordance with Bankruptcy Rule 1009.

jj. "Secured Claim" means a Claim that is secured by a Lien on, or security interest in, property of any Debtor, or that has the benefit of rights of setoff under Section 553 of the Bankruptcy Code, but only to the extent of the value of the creditor's interest in the Debtor's interest in such property, which value shall be determined as provided in Section 506 of the Bankruptcy Code.

kk. "U.S. Trustee" shall mean the Office of the United States Trustee.

**1.3  Interpretation.**  For purposes of the Plan, (a) any reference herein to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (b) any reference herein to an existing document or exhibit filed or to be filed means such document or exhibit, as it may have been or may be amended, modified or supplemented; (c) unless otherwise specified, all references herein to Articles, Sections, Schedules and Exhibits are references to Articles, Sections, Schedules and Exhibits of or to the Plan; (d) the words "herein" and "hereto" refer to the Plan in their entirety rather than to a particular portion of the Plan; (e) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; and (f) the rules of construction set forth in Section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

**1.4  Computation of Time.**  In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006 shall apply.

## ARTICLE II

### PROVISIONS FOR PAYMENT OF ALLOWED ADMINISTRATIVE EXPENSE CLAIMS, PRIORITY TAX CLAIMS AND STATUTORY FEES

**2.1  Administrative Expense Claims**.  On the Effective Date or at such time as otherwise agreed, the holder of an allowed Administrative Claim against the Debtor shall receive, in full and final satisfaction of such Holder's allowed Claim, cash in an amount equal to the unpaid portion of such allowed Claim or, by agreement of the Holder, deferred payments pursuant to this Plan. Upon information and belief, the only administrative expense claimant herein is counsel for the Debtor, who is holding a *de minimis* retainer and who has agreed (informally) to be compensated during the life of this Plan.

To facilitate the orderly payment of Administrative Claims, the Confirmation Order will establish an Administrative Claims Bar Date as described in the Plan. <u>All Administrative Claims must be asserted no later than the Administrative Claims Bar Date in order to be allowed and eligible for payment. Parties who fail to assert Administrative Claims in accordance with the Administrative Bar Date will be forever barred from receiving distributions under the Plan as Administrative Claim holders</u>. Administrative Claims remain subject to approval of the Bankruptcy Court as a condition precedent to payment.

**2.2  U.S. Trustee's Fees.**  Insofar as this is a Chapter 12 case, there are no fees due and owing to the U.S. Trustee.

**2.3    Priority Tax Claims**. Unless a Final Order otherwise provides, on the Effective Date, each Holder of a Priority Tax Claim that is an allowed Claim against the Debtor shall receive, in full and final satisfaction of such Holder's allowed Claim cash in an amount equal to the unpaid portion of such allowed Claim. Notwithstanding the foregoing, the Holder of an allowed Priority Tax Claim shall not be entitled to receive any payment on account of any penalty arising with respect to or in connection with the allowed Priority Tax Claim.

**2.4    Full Satisfaction, Discharge and Release**.  The payments, distributions and other treatment afforded to Holders of allowed Administrative Claims and allowed Priority Tax Claims against the Debtor under this Article II shall be in full and complete satisfaction, discharge and release of such allowed Claims.

**ARTICLE III**

**CLASSIFICATION, IMPAIRMENT AND TREATMENT OF
CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTOR**

**3.1    Generally.**  All Claims and Equity Interests, except Administrative Expense Claims and Priority Tax Claims, are placed in Classes as set forth below.  A Claim or Interest is placed in a particular Class only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and such Claim or Interest has not been paid, released, or otherwise settled or paid prior to the Effective Date, and is classified in other Classes to the extent that any remainder of the Claim or Equity Interest qualifies within the description of such other Classes.

**3.2    Identification and Treatment of Classes.**

The following are the designations for, and treatment of, the Classes of Claims against the Debtor:

**(a)    Class 1 - Allowed Secured Claim of Rocket Mortgage, LLC f/k/a Quicken Loans, LLC.** Class 1 consists of the allowed Secured Claim of Rocket Mortgage, LLC in the amount of $697,971.54, being premised upon a promissory note secured by a residential mortgage on which the Debtor and his non-filing spouse are jointly liable. This obligation was not in default on the Petition Date and will continue to be paid, pursuant to the terms of the promissory note and accompanying mortgage.

**(c)    Class 2 – Allowed Secured Claims of Capital One Auto Finance.** Class 2 shall consist of the allowed secured claim of Capital One Auto Finance, which is premised upon a promissory note secured by a lien on the Debtor's 2017 Jeep Wrangler (the "Jeep Wrangler"). The Debtor believes the Class 2 claim to be partially unsecured, insofar as the claim is for $23,363.60 and the Jeep Wrangler is likely only sellable, in present market conditions, for $20,000.00 to $22,000.00. However, in the interests of efficiency and avoiding a legal fight over valuation that would likely subsume more in legal fees than could be realized in savings, the Debtor is treating Class 2 as fully secured. The underlying obligation was not in default on the Petition Date and will continue to be paid in the ordinary course, pursuant to the terms of the promissory note.

**(d)    Class 3 – General Unsecured Creditors.** Class 3 shall consist of the claims of (i) the District of Columbia Department of Motor Vehicles (the "DMV"), for $6,800.00; (ii) Bank of America, N.A. ("BoA"), for $5,013.40; (iii) Baruck Brothers Investments, LLC ("BBI"), for

$1,050,000.00; (iv) Citibank ("Citi"), for $1,280.34; the DiBenedetto Law Group PC ("DLG"), for $74,255.66; (v) the Farley Law Firm ("FLF"), for $5,000.00; and (vi) any other creditors who may haveallowed general unsecured claims. The BBI, FLF, and DLG obligations are all correlative to the Debtor's work in the farming business. The BoA and Citi obligations are of a consumer variety. The DMV obligation arises on account of unpaid parking tickets and is not regarded as a secured claim because the Jeep Wrangler has no equity after consideration of the Class 2 claim.

Class 3 will be paid from the liquidation of the McElfresh Claim, with all Class 3 members sharing in proceeds *pari passu*, *provided* Class 3 will only be paid after all Allowed Administrative Claims are paid in full. The means of liquidating the McElfresh Claim are set forth in greater detail in Article IV, *infra*.

## ARTICLE IV

## MEANS OF IMPLEMENTING THE PLAN

**4.1    Monthly Payments**. Commencing on the first business day of the first calendar month succeeding the month in which the Effective Date occurs, Mr. Barnette will pay to Administrative Claim Holders the sum of $500.00, each month, for a period of 36 months. Should such payments serve to retire Allowed Administrative Claims in full, any surplus payments will be applied to the payment of Class 3.

**4.2    McElfresh Claim**.

Within 30 calendar days of the date on which the Confirmation Order becomes a Final Order, Mr. Barnette will cause the McElfresh Claim to be removed to the United States District Court for the Northern District of California and, in reasonably expedient succession thereto, will move to the have the litigation transferred to this Honorable Court as an adversary proceeding, *unless* the McElfresh Claim is first resolved (in accord with the provisions of this Section 4.2) prior to such time.

Mr. Barnette will litigate the McElfresh Claim, to the point of judgment or settlement, in this Honorable Court, as an adversary proceeding. The cause of action for professional negligence is against McElfresh Law, Inc. and the entity's principal. While Mr. Barnette does have various co-plaintiffs in the matter, and certain subrogation-centric issues will envelope any recovery therefrom, it is reasonably anticipated that the majority of the net proceeds from the McElfresh Claim (after payment of professional fees) can be made available to general unsecured creditors herein or, at minimum, made available to the reduction of the Claim of BBI, which is the largest creditor in Class 3.

In litigating the McElfresh Claim, Mr. Barnette will engage special counsel for purposes of removing the case and seeking to transfer venue. He will thereafter employ counsel in this

8

Honorable Court, either (i) utilizing the services of his undersigned general bankruptcy counsel; or (ii) engaging special counsel.

Should there come a time when it appears to Mr. Barnette, considering the best interests of all creditors, to settle or otherwise resolve the McElfresh Claim, a motion will be filed pursuant to Federal Rule of Bankruptcy Procedure 9019.

## ARTICLE V

## PROVISIONS GOVERNING DISTRIBUTIONS

**5.1     Delivery of Distributions**.  Distributions and deliveries to Holders of Allowed Claims shall be made at the addresses set forth on the proofs of claim filed by such Holders (or at the last known addresses of such Holders if no proof of claim is filed).

**5.2     No Interest Unless Otherwise Provided**.  No interest shall be paid on any Claim unless, and only to the extent permitted, under the terms of the Plan.

**5.3     Undistributed Property**.  If any Distribution remains unclaimed for a period of 90 days after it has been delivered (or attempted to be delivered) in accordance with the Plan to the Holder entitled thereto, such Unclaimed Property shall be forfeited by such Holder.  Unclaimed Property shall be donated to The University of Miami School of Law Bankruptcy Clinic, to be administered by Patricia Redmond.

## ARTICLE VI

## CONDITIONS PRECEDENT TO EFFECTIVENESS OF PLAN

**6.1     Conditions to Effectiveness of Plan.**  The Effective Date of the Plan shall not occur unless and until the following conditions shall have been satisfied or waived by the Plan Proponent: (a) the Bankruptcy Court shall have entered the Confirmation Order in form and substance acceptable to the Plan Proponent, and such Confirmation Order shall be a Final Order; and (b) the Bankruptcy Court shall have approved the information contained in the Disclosure Statement as adequate pursuant to Section 1125 of the Bankruptcy Code.

**6.2     Notice of Confirmation of the Plan.**  Notice of entry of the Confirmation Order shall be provided as required by Bankruptcy Rule 3020(c)(2).

## ARTICLE VII

## RETENTION OF JURISDICTION

**7.1     Retention of Jurisdiction.**  Pursuant to Sections 1334 and 157 of Title 28 of the United States Code, the Bankruptcy Court shall retain jurisdiction of all matters arising in, arising under, and related to the Chapter 12 case and the Plan, for the purposes of Sections 105(a) and 1229 of the Bankruptcy Code, and for, among other things, the following purposes:

(a)     to hear and determine any and all adversary proceedings, applications, or contested matters, including avoidance actions, and any remands from any appeals;

  (b) to hear and to determine all controversies, disputes, and suits which may arise in connection with the execution, interpretation, implementation, consummation, or enforcement of the Plan;

  (c) to consider any modification of the Plan pursuant to section 1229 of the Bankruptcy Code, to cure any defect or omission or to reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

  (d) to enter, enforce and implement such orders (including orders entered prior to the Confirmation Date) as may be necessary or appropriate to execute, interpret, implement, consummate or enforce the terms and conditions of the Plan and the transactions contemplated hereunder;

  (e) to enter and to implement such orders (including orders entered prior to the Confirmation Date) as may be necessary or appropriate to execute, interpret, implement or enforce the terms and conditions of the Plan;

  (f) to hear and to determine any other matter not inconsistent with the Bankruptcy Code and title 28 of the United States Code that may arise in connection with or related to the Plan; and

  (g) to adjudicate the McElfresh Claim.

  **7.2** **Abstention and Other Courts.** If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of or relating to the Chapter 12 cases, this section of the Plan shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

## ARTICLE VIII

## LIQUIDATION ANALYSIS

  **8.1** **Analysis of Assets.** The majority of Mr. Barnette's assets are fully exempt and, as such, would not be available for liquidation in a hypothetical Chapter 7 case. *See* Schedule C: The Property You Claim as Exempt, DE #1, at pp. 19-20. There are, however, two notable assets that are not exempt in nature: (i) Mr. Barnette's ownership interest in District Growers LLC; and (ii) the McElfresh Claim. The latter asset is easily addressed: insofar as the McElfresh Claim is being liquidated under this Plan, without a commission being paid to a Chapter 7 trustee, it is self-evident that creditors will receive as much as—if not more than—they would receive, from that asset, in a hypothetical Chapter 7 proceeding.

  The more complex asset is District Growers LLC. This is a distressed entity operating in a niche, regulated space within a city where the local government has ceased enforcing encroachments on the regulated space. As noted above, two marijuana dispensaries have recently closed under pressure from unlicensed operators, with another marijuana cultivation facility having also recently closed for seemingly-similar reasons. District Growers LLC has, generally,

10

negative cash flow; any effort to value the company through a so-called "multiple" of net profits would only serve to aid in distilling a negative valuation.

Equally, District Growers LLC is a licensed entity that does not readily invite sale—in whole or through asset liquidation—because of the illiquid nature of such licenses. These realities serve to even further depress the value of the under-performing, distressed entity.

In light of these difficult realities, Mr. Barnette believes a Chapter 7 sale of his 80% interest in District Growers LLC would be likely to fetch $16,000.00 (with the entity having a value of $20,000.00), net of legal fees, broker's fees and commissions, and a Chapter 7 trustee's commission.

## ARTICLE IX

## MISCELLANEOUS PROVISIONS

**9.1    Severability.** Should the Bankruptcy Court determine that any provision of the Plan is unenforceable either on its face or as applied to any Claim or Equity Interest or transaction, the Plan Proponents may modify the Plan in accordance with the Plan, as applicable, so that such provision shall not be applicable to the Holder of any Claim or Equity Interest.

**9.2    Binding Effect.**  Upon the entry of the Confirmation Order, all provisions of the Plan shall be binding upon, and shall inure to the benefit of, the Debtor, the Holders of Claims and Equity Interests, and such Persons' respective successors and assigns.

**9.3    Intentionally Omitted.**

**9.4    Governing Law.**  Unless a rule of law or procedure supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, or a specific choice of law provision is provided, the laws of the District of Columbia shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, without regard to conflicts of law.

**9.5    Intentionally Omitted.**

**9.6    Timing of Distributions.**  Any Distribution required to be made hereunder on a day other than a Business Day shall be due and payable on the next succeeding Business Day.

**9.7    Revocation or Withdrawal of Plan.**  The Plan Proponent reserves the right to revoke or withdraw the Plan prior to the entry of the Confirmation Order. If the Plan is withdrawn or revoked, then the result shall be the same as if the Confirmation Order had not been entered and the Effective Date had not occurred.  If the Plan is revoked or withdrawn prior to the entry of the Confirmation Order, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other Person or to prejudice in any manner the rights of the such entity or any Person in any further proceedings involving such entity.

**9.8    Nonmaterial Modifications.**  The Plan Proponent may, with the approval of the Bankruptcy Court and without notice to Holders of Claims and Equity Interests, correct any

nonmaterial defect, omission, or inconsistency herein in such manner and to such extent as may be necessary or desirable.

**9.9    No Recourse.**  No Person entitled to receive a payment or Distribution under the Plan will have any recourse against the Estate, the Trustee and his professionals, the Debtor, or the Plan Proponent and its professionals, other than the right to receive Distributions in accordance with the terms of the Plan.

**9.10    Notices.**  Any notice required or permitted to be provided hereunder shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery, or (c) prepaid overnight delivery service and addressed as follows:

> Maurice B. VerStandig, Esq.
> THE BELMONT FIRM
> 1050 Connecticut Avenue, NW
> Suite 500
> Washington, DC 20036
> *Attorney for Mr. Barnette*

**9.11    Saturday, Sunday, or Legal Holiday.**  If any payment or act under the Plan should be required to be made or performed on a day that is not a Business Day, then the payment or act may be completed on the next succeeding day that is a Business Day, in which event the payment or act will be deemed to have been completed on the required day.

**9.12    Successors and Assigns.**  The rights, benefits and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors and/or assigns of such Person.

Respectfully submitted,

Dated: July 15, 2024

By: /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. MD18071
The Belmont Firm
1050 Connecticut Avenue, NW
Suite 500
Washington, DC 20036
Phone: (202) 991-1101
mac@dcbankruptcy.com
*Counsel for Mr. Barnette*

12