IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re:<br><br>**COREY BARNETTE,**<br><br>Debtor. | **Case No. 24-00111-ELG**<br><br>**Chapter 11** |

### U.S. TRUSTEE'S MOTION TO DISMISS CHAPTER 11 CASE

Gerard R. Vetter, Acting United States Trustee for Region 4, by counsel, moves this Court to dismiss this chapter 11 case. In support of this motion the following representations are made:

1. The Court has authority to hear and decide this matter. 28 U.S.C. § 1334.

2. This is a core matter. 28 U.S.C. § 157(b)(2)(A).

3. On April 14, 2024, the Debtor filed a petition for relief under chapter 12 of the Bankruptcy Code. Doc. No. 1. The filing also included Debtor's schedules A through H and a statement entitled "Disclosure Concerning Marijuana Interests" ("Disclosure").

4. The Disclosure states that "Mr. Barnette derives an income from his ownership interest in a licensed marijuana cultivation facility in the District of Columbia. Mr. Barnette has also historically owned an interest in a marijuana dispensary, though the dispensary is now closed and non-operational in nature." Doc. No. 1, pp. 9-10.

5. The Debtor filed his Schedules I and J on May 1, 2024. Doc. No.16. The Debtor states that he is employed as the Director of District Growers, LLC ("DGL"), receiving net income of $4,000.00 per month. The Debtor's non-filing spouse is employed by an entity known as LMI,

Michael T. Freeman
Asst. United States Trustee
Office of the United States Trustee
1725 Duke St., Suite 650
Alexandria, VA 22314
(703) 557-7274- Direct Dial
(202) 934-4174 – Office Cell
michael.t.freeman@usdoj.gov

receiving gross income of $14,583.32 per month, with net income of $10,040.94 after deductions. The Debtor and non-filing spouse's income show that the majority of the household income comes from the non-filing spouse, who earns approximately 2.5 times the Debtor on net income and more than 3 times the Debtor on gross income.

6. Based on the Disclosure, the Debtor does not dispute that his business is solely predicated on the cultivation, possession, and sale of marijuana and marijuana-infused products. The Debtor violated federal narcotics laws through the ownership of, and employment by, the marijuana cultivation facility, and through the ownership of the prior dispensary. 21 U.S.C. §§ 841(a)(1), 846; 18 U.S.C. § 2(a).

7. The Debtor asserts that the cultivation of marijuana is legal in the District of Columbia pursuant to D.C. Code § 7-1671.06. While not explicitly stated, the Debtor's assertion is presumed to be that, because marijuana is legal in the District of Columbia, it is therefore permissible for him to be in bankruptcy in the District of Columbia.

8. On October 1, 2024, this Court entered an Order Granting Motion to Convert to Chapter 11 and Elect Subchapter V Designation. Doc. No. 52.

9. The Bankruptcy Code at 11 U.S.C. § 1112(b)(1) generally provides that, when a movant establishes cause, the Court shall either convert to chapter 7 or dismiss a case filed under this chapter based on whichever is in the best interests of creditors and the estate.

10. At the time of filing this Motion, the Debtor is ineligible to proceed in this bankruptcy for four reasons:

    a. The Debtor's business violates federal narcotics law, and thus the Debtor is not eligible to receive relief through the bankruptcy process;

    b. The entirety of Debtor's income constitutes the proceeds of illegal activity which cannot be used to fund a plan, and which precludes the confirmation of any plan;

    c. The Debtor's gross mismanagement of the estate based upon his failure to account for withdrawals of $95,195 and failure to disclose life insurance policies and the subsequent withdrawals made against the policies; and

    d. The Debtor's failure to file the monthly operating report for October 2024, which report was due by November 21st.

## Argument

**A.    The Court Has Cause to Dismiss or Convert This Bankruptcy Case.**

The Court, for cause, after notice and hearing, may dismiss or convert a case to a case under chapter 7, whichever is in the best interests of the creditors and the estate. 11 U.S.C. § 1112(b)(1). The U.S. Trustee is specifically seeking dismissal of this case based on the marijuana connections that underpin this proceeding. Alternatively, the U.S. Trustee seeks dismissal for gross mismanagement pre- and post-petition by the Debtor and the failure to file the October monthly operating report.

**B.    The Debtor is Ineligible to Proceed in Bankruptcy as the Debtor Derives his Income from a Marijuana Business.**

Marijuana is a Schedule I controlled substance under the federal Controlled Substances Act ("CSA"), 21 U.S.C. § 801, *et seq*. The CSA broadly provides that possessing, growing, and dispensing marijuana and assisting others to do so are illegal. *See* 21 U.S.C. §841(a)(1). Further, 21 U.S.C. § 856(a) makes it unlawful to "knowingly open, lease, rent, use, or maintain any place" to manufacture or distribute a controlled substance. It is also a crime to conspire to violate the CSA. *See* 21 U.S.C. § 846.

Even though several states, including the District of Columbia, have legalized marijuana for medicinal or recreational purposes, federal law continues to make it illegal to engage in marijuana activities prohibited by the CSA or to conspire to violate the CSA. *Gonzales v. Raich,* 545 U.S. 1, 29 (2005) (holding that the CSA is a valid exercise of federal power under the Commerce Clause and thus supersedes state law authorizing medical marijuana).

The Debtor does not dispute the nature of his business. DGL is a marijuana cultivation facility that derives its income from the growth and sale of marijuana. Instead, the Debtor argues that, because the District of Columbia legalized the growth of marijuana on a local level, that legalization also justifies or supports that the District of Columbia Bankruptcy Court can apply federal laws and provide him with relief under the Bankruptcy Code. Debtor's Disclosure states that there is no D.C. controlling case law that addresses whether a debtor working in the marijuana industry is barred from utilizing the bankruptcy process, and while not explicitly stated, the argument of the Debtor is allegedly that the D.C. Code, because it was enacted by Congress, is therefore federal law.

This argument is misplaced. The question raised is not a unique or new one. In a 1984 ruling, the D.C. Circuit Court of Appeals stated that "[w]hen Congress acts as the local legislature for the District of Columbia and enacts legislation applicable only to the District of Columbia and tailored to meet specifically local needs, its enactments should—absent evidence of contrary congressional intent— be treated as local law, interacting with federal law as would the laws of the several states." *District Properties Assocs. v. District of Columbia,* 743 F.2d 21, 27 (1984).

4

Examining this argument at a more granular level, the D.C. Metro Police itself recognizes and warns that marijuana is federally prohibited in the District of Columbia:

> **Enforcement by federal law enforcement agencies.**
>
> Although the District of Columbia has decriminalized possession of up to two ounces of marijuana for persons over the age of 21, federal law continues to prohibit the possession or use of any amount of marijuana. As a result, federal law enforcement officers may arrest anyone in the District of Columbia for possession or use of any amount of marijuana as a violation of federal law.

The Facts on DC Marijuana Laws, D.C. Metropolitan Police, https://mpdc.dc.gov/marijuana.

Contrary to Debtor's assertion, this is not a novel concept or new issue. Bankruptcy proceedings are "inherently proceedings in equity," *Pepper v. Litton*, 308 U.S. 295, 304-05 (1939), and a court in equity ordinarily should not "lend its judicial power to a plaintiff who seeks to invoke that power for the purpose of consummating a transaction in clear violation of law." *See Johnson v. Yellow Cab Transit Co.*, 321 U.S. 383, 387 (1944); *see also*, *In re Rent-Rite Super Kegs W. Ltd.*, 484 B.R. 799, 806 (Bankr. D. Colo. 2012) (dismissing chapter 11 case of debtor who leased commercial space to a marijuana grow operation).

More specifically, bankruptcy courts should avoid undue entanglement and promotion of conduct violating federal drug laws, laws which they have sworn to uphold. In the *Way to Grow* case, the Colorado District Court affirmed the bankruptcy court's dismissal of a debtor's bankruptcy case because of the debtor's involvement in the illegal marijuana trade. The District Court summarized that it "is frankly inconceivable that Congress could have ever intended that federal judicial officials could, in the course of adjudicating disputes under the Bankruptcy Code, approve a reorganization plan that relies on violations of federal criminal law." *In re Way to Grow*, 610 B.R. 338, 346 (D. Colo. 2019). Similarly, the bankruptcy court in *Johnson* cautioned that "federal judicial officers take an oath to uphold federal law and countenancing the Debtor's continued operations of his marijuana business under the court's protection is hardly consistent with that oath." *In re Johnson*, 532 B.R. 53, 56 (Bankr. W.D. Mich. 2015). The Tenth Circuit BAP in *Arenas* highlighted judges' oaths to uphold federal law as a critical factor in upholding

dismissal of the case (stating debtors are caught between a business the state deems legal "but which the laws of the United States—laws that every United States Judge swears to uphold—proscribe and subject to criminal sanctions."). *In re Arenas*, 535 B.R. 845, 854 (B.A.P. 10th Cir. 2015) (*Arenas II*). And the bankruptcy court in *Basrah Custom Design* stated that "a federal court cannot be asked to enforce the protections of the Bankruptcy Code in aid of a Debtor whose activities constitute a continuing federal crime . . . ." *In re Basrah Custom Design, Inc.*, 600 B.R. 368, 379 (Bankr. E.D. Mich. 2019) (citation and internal punctuation omitted).[1]

The concern regarding a bankruptcy court's promotion of CSA illegality in reorganization cases, providing cause for dismissal, arises in a broad spectrum of factual contexts, including for aiding and abetting CSA violations. In the *Way to Grow* case, the District Court for the District of Colorado upheld the bankruptcy court's dismissal of one of three debtors, Pure Agro, based on its intended aiding and abetting of CSA violations. 610 B.R. at 353. Two of the three jointly administered debtors in *Way to Grow* sold equipment and supplies to persons and entities knowing that the equipment and supplies would be used to grow marijuana. The third debtor, Pure Agro, was the parent holding company for the first two. *See id.* at 342. The bankruptcy court dismissed all three debtors' cases based on their violations of 21 U.S.C. § 843(a)(7). On appeal, the district court affirmed the bankruptcy court, but, with respect to Pure Agro, "for a slightly different reason evident in the record." *Id.* at 340. Pure Agro's "*purpose* [was] to support its subsidiaries in their efforts to sell to customers whom the subsidiaries and Pure Agro [knew] to be using the products [in violation of the CSA]." *Id.* at 354 (emphasis in original). And thus, "[t]he evidence before the bankruptcy court was enough to support a finding that Pure Agro aids and abets its

---

[1] The federal courts' refusal to intervene on behalf of a litigant engaged in illegal conduct is not limited to bankruptcy cases. Federal courts have repeatedly refused to entertain cases arising from illegal conduct such as gambling, drug trafficking, and accepting kickbacks. *See e.g.*, *United States v. Acme Process Equipment Co.*, 385 U.S. 138 (1966), *reh'g den*ied 385 U.S. 1032; *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612, 1633 (2018) (Thomas, concurring). *See generally* McNichols, *The New Highwayman: Enforcement of U.S. Patents on Cannabis Products*, 101 J. Pat. & Trademark Off. Soc'y 24, 46 (2019). *See, e.g.*, *Polk v. Gontmakher*, 2019 WL 4058970 *2 (W.D. Wash. August 28, 2019) (dismissing action seeking to enforce a purported ownership interest in a marijuana business).

subsidiaries' violations of federal law" warranting dismissal. *Id.* at 353 (citing 18 U.S.C. § 2(a)).

In *In re Burton*, 610 B.R. 633 (9th Cir. B.A.P. 2020), the Ninth Circuit Bankruptcy Appellate Panel affirmed the dismissal of a chapter 13 case involving the administration of proceeds from debtor's ownership in a cannabis related enterprise. Even though the business venture was no longer operating an illegal marijuana business, the bankruptcy court found that in its breach of contract lawsuit the debtors were still seeking to recover funds attributable to a contract under which the business grew, cultivated, or sold marijuana, *id.* at 636, and "[a]ny recovery from the litigation would be derived from conduct that is illegal under federal law." *Id.* Thus, any distribution to the Burtons "would also be derived from illegal conduct," *id.*, and "neither a case trustee, nor these Debtors, can sell or liquidate the . . . ownership interest in Agricann, which is property of this estate through the bankruptcy case" because "[t]his would necessitate the Court and the Trustee's involvement in condoning the illegal activity." *Id.* at 636-37.

And in *Basrah Custom Design,* the chapter 11 debtor sought to use the bankruptcy court to set aside one illegal contract to operate a marijuana dispensary for a better illegal contract to do the same. *In re Basrah Custom Design Inc.*, 600 B.R. 368. In dismissing the debtor's bankruptcy, the *Basrah* court stated that it could not be used to violate federal law:

> The actual purpose of filing and prosecuting this bankruptcy case is for the Debtor and its 100% shareholder to use this bankruptcy court, and the Bankruptcy Code, to assist them in obtaining a result that is contrary to federal criminal law under the Controlled Substances Act, and therefore contrary to federal public policy.
>
> This federal court cannot allow itself to be used in this way.

*Id.* at 383.

The Debtor's business involves marijuana in multiple ways, precluding relief. First, and undisputed, the Debtor is deriving the majority of his portion of the household income from a marijuana cultivation facility. Second, the Debtor previously operated a dispensary, and it is unclear how this may be involved in any proceeding or reorganization, or if any of the debts arose

7

from the operation of that business. Third, the main creditor and the crux of the reason for the filing of this case is Baruck Bros Investments, LLC, *et al.*, scheduled as Claim 4.2, in the amount of $1,050,000, which debt, upon information and belief, arose from a separate marijuana business venture unrelated to either DGL or the prior dispensary; but regardless, the creditor likewise should not benefit from the bankruptcy proceedings. *See, e.g.*, *In re Medpoint Management*, LLC, 528 B.R. 178, 187 (Bankr. D. Ariz. 2015), *vacated in part on other grounds*, B.A.P. No. AZ-15-1130, 2016 WL 3251581 (B.A.P. 9th Cir. 2016) ("the unclean hands defense arises from and applies to Petitioning Creditors' medical marijuana-related claims against Medpoint. Petitioning Creditors' hands are unclean and they cannot now seek relief from this Court."). The involvement of marijuana in the Debtor's business is sufficient cause to dismiss this case and the Court should not be used to assist in the reorganization of a federally prohibited business.

   C. **The Case was filed in Bad Faith due to the use of Bankruptcy Proceedings While Continuing to Violate Federal Law.**

Filing a case in bad faith is cause to dismiss or convert. *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 373 (2007). A debtor acts in bad faith by asking a federal court for permission to continue to violate federal law. *In re Rent Rite Super Kegs West Ltd.*, 484 B.R. at 807 ("[U]nder no circumstance can the Court place itself in the position of condoning the Debtor's criminal activity by allowing it to utilize the shelter of the Bankruptcy Code while continuing its unlawful practice of leasing space to those who are engaged in the business of cultivating a Schedule I controlled substance."). In this context, good faith is an objective, not subjective, standard. *Arenas II*, 535 B.R. at 852-53 (affirming dismissal over requested conversion to chapter 13; even though debtors were "sincere and credible" because good faith is objective, not subjective, it is "objectively unreasonable for them to seek Chapter 13 relief."). Simply put, "it is not asking too much of debtors to obey federal laws, including criminal laws, as a condition of

8

obtaining relief under the Bankruptcy Code." *In re Johnson*, 532 B.R. 53, 59 (Bankr. W.D. Mich. 2015).

The Debtor filed this case in bad faith. The Debtor owns a marijuana cultivation facility, an illegal enterprise under federal law, and is seeking to use the Bankruptcy Court to further his illegal enterprise. Moreover, in bringing his financial and litigation issues into the bankruptcy court, the Debtor knew that he would use this Court in his tactics to address issues with the main creditor, Baruck Bros. Investments, LLC. The Court should not assist the Debtor to reorganize for this purpose. *See Johnson v. Yellow Cab Transit Co.*, 321 U.S. 383, 387 (1944) ("[B]ecause of the clean hands doctrine a federal court should not, in an ordinary case, lend its judicial power to a [party] who seeks to invoke that power for the purpose of consummating a transaction in clear violation of law.").[2]

### D. The Debtor's gross mismanagement of the estate.

Section 1112(b)(4) contains a non-exhaustive list of circumstances which constitute "cause" for dismissal or conversion. *See* 11 U.S.C. § 1112(b)(4). As specifically enumerated in section 1112(b)(4) and present in this case, "cause" includes gross mismanagement of the estate; *See* 11 U.S.C. § 1112(b)(4)(B). A debtor in a chapter 11 proceeding must manage the estate with an aim to "protect and conserve property . . . for the benefit of creditors." *In re Devers*, 759 F.2d 751, 754 (9th Cir. 1985); *see also In re Korn*, 523 B.R. 453, 465 (Bankr. E.D. Pa. 2014) (finding

---

[2] The Ninth Circuit's decision in *Garvin v. Cook Investments NW, SPNWY, LLC*, 922 F.3d 1031 (9th Cir. 2019) ("we conclude that § 1129(a)(3) directs courts to look only to the proposal of a plan, not the terms of the plan"), does not compel a different result. Although the court in *Cook* ruled that the United States Trustee's motion to dismiss had been waived by not being renewed at plan confirmation, it nevertheless stated that motions to dismiss for cause remain viable even if a proposed plan may satisfy the confirmation standard: "We do not believe that the interpretation compelled by the text will result in bankruptcy proceedings being used to facilitate legal violations. To begin, absent waiver, as in this case, courts may consider gross mismanagement issues under § 1112(b)." *Id.* at 1036.

cause to dismiss case based upon finding that the "debtor acted either intentionally or recklessly in violating his financial disclosure obligations as a chapter 11 debtor."

Here, the Debtor has failed to explain the use of $95,195 in cash withdrawals. The Estate of Minnie S. Wright Wells Fargo account x3086 ("Estate Account") shows the following withdrawals:

| Date | Description | Withdrawal |
|---|---|---|
| 2/7/24 | Prepetition - Withdrawal Made in a Branch/Store | $31,430.00 |
| 2/9/24 | Prepetition - Withdrawal Made in a Branch/Store | $15,255.00 |
| 5/22/24 | Postpetition -Withdrawal Made in a Branch/Store | $48,510.00 |

When asked about the pre-petition withdrawals at the 341 Meeting of Creditors on October 25, 2024, the Debtor said they were used for rental payments to Shorb Properties but could not account for where the funds went and never provided proof. The Debtor likewise could not provide confirmation of what happened to the post-petition funds withdrawn at the branch on May 22. The Debtor subsequently has failed to provide evidence of the use of these funds and to adequately explain what happened to same despite requests by the U.S. Trustee's office.

Additionally, on the Debtor's Schedule A/B, the Debtor checked the box "no" when asked if he had any interests in insurance policies.

> 31. **Interests in insurance policies**
> Examples: Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance
> ☒ No
> ☐ Yes. Name the insurance company of each policy and list its value.
> Company name:     Beneficiary:     Surrender or refund value:

At the 341 Meeting of Creditors conducted post conversion, the Debtor stated for the first time that he had whole life and term life insurance policies with Mass Mutual for over 20 years valued at over $500,000. The Debtor stated that the cash surrender value of the policies is $0 because he and his wife have taken out loans against the policies over the past six months, including while the Debtor has been in bankruptcy, to cover bills. Neither the policies nor the

10

subsequent withdrawals were disclosed in his Schedules nor at the prior 341 hearings. The Debtor testified at the 341 that "we've taken out loans against the life insurance policy to cover bills around the house" and that this was done periodically over the last six months while the Debtor was in bankruptcy as well as before. The Debtor has not provided any documentation regarding the loans taken against the policies post-petition or the policies and their values, nor could he provide how much was cashed out.

The Debtor's failure to account for use of estate funds constitutes gross mismanagement of the estate.

### E. Failure to File Operating Reports.

Under 11 U.S.C. § 1112(b)(4)(F) cause exists where "unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter". The Debtor has failed to file a monthly operating report for October 2024. The November report will become due on December 21st, prior to any hearing on this motion. Failure to file this report is grounds for conversion or dismissal of the case.[3]

### F. Dismissal is the Appropriate Remedy.

As the U.S. Trustee has established a *prima facie* case that "cause" exists to convert or dismiss this case, the burden shifts to the Debtor to demonstrate that "unusual circumstances" exist that establish that converting or dismissing the case is not in the best interests of creditors and the estate to avoid the mandatory conversion or dismissal of their case. *See* 11 U.S.C. § 1112(b)(2). For the exception to apply, the court must find and specifically identify unusual circumstances

---

[3] While not stated as a cause for conversion, the U.S. Trustee's office has also not received confirmation that a Debtor-In-Possession account has been opened. When asked about this at the October 341 hearing, the Debtor stated he would not open one, and Counsel stated they would be filing a motion to retain the pre-petition account. However, Debtor testified that he had closed the Estate Account and that he had no other bank account open. Debtor and counsel acknowledged that they would therefore be opening a DIP account. No motion has been filed to request a change in the requirement to open the DIP account.

establishing that converting or dismissing the case is not in the best interests of creditors and the estate. *Id.* The debtor or another party in interest must then: (1) establish that there is a reasonable likelihood that a plan will be confirmed within a reasonable period of time; and (2) that the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A)—(i) for which there exists a reasonable justification for the act or omission; and (ii) that it will be cured within a reasonable period of time fixed by the court. *Id.*; *See In re Landmark Atl. Hess Farm, LLC,* 448 B.R. 707 (Bankr. D. Md. 2011). The U.S. Trustee is unaware of any unusual circumstances that would result in a finding that either conversion or dismissal of this case in not in the best interest of creditors and the estate.

Dismissal is the appropriate remedy in this particular case. The basis for this motion and the case – revolving around a marijuana cultivation business – further complicates matters, in that, the conversion of this case to one under Chapter 7 would impose on the Chapter 7 trustee the duty to "collect and reduce to money" the estate's assets. 11 U.S.C. § 704(a)(1). However, bankruptcy trustees must comply with applicable non-bankruptcy regulations regarding public health and safety in administering the estate. *Midlantic Nat. Bank v. New Jersey Dep't of Envtl. Prot.*, 474 U.S. 494, 502 (1986). The CSA is a non-bankruptcy regulation promoting public health and safety. 21 U.S.C. § 801(2) ("The Congress makes the following findings and declarations . . . [t]he illegal importation, manufacture, distribution, and possession and improper use of controlled substances have a substantial and detrimental effect on the health and general welfare of the American people.").

The Debtor is the director and majority owner of a marijuana cultivation facility, and previously owned a marijuana dispensary. As discussed by the panel in *In re Burton* and the cases referenced therein, a trustee would be unable to collect or distribute these types of assets without

12

violating the CSA. 610 B.R. at 640-41 ("The Burtons failed to demonstrate that their ties to Agricann would not result in proceeds of an illegal business becoming part of the bankruptcy estate, requiring the trustee and the court to administer assets that constitute proceeds of activity criminalized by the CSA. Under the facts presented, the bankruptcy court did not abuse its discretion in dismissing the case for that reason."). Because the CSA promotes public health and safety, the trustee's duty to administer the estate must yield to the CSA's restrictions. *See also Medpoint Management*, 528 B.R. at 185. Thus, a trustee would be unable to administer the estate's assets.

Further, administration of the estate's assets, such as selling marijuana, could subject the Chapter 7 trustee to criminal liability. The inability to administer the estate lawfully compels its dismissal. *See, e.g.*, *In re Arenas*, 514 B.R. 887, 892 (Bankr. D. Colo. 2014) ("The impossibility of lawfully administering the Debtors' bankruptcy estate under chapter 7 constitutes cause for dismissal of the Debtors' case under 11 U.S.C. § 707(a)."), *aff'd Arenas II*, 535 B.R. 845 (B.A.P. 10th Cir. 2015); *In re Vel Rey Properties, Inc.*, 174 B.R. 859, 866 (Bankr. D.D.C. 1994) ("[B]ankruptcy is not intended to be a haven for law breakers. If the debtor cannot be liquidated or reorganized in compliance with state laws, then bankruptcy is not the place for the debtor.").

Restating the arguments above, the Debtor continues to violate federal law in the operation of the marijuana related business, has filed this case in bad faith while continuing to violate federal law, is ineligible for bankruptcy relief as the income is derived from a marijuana related business, and has engaged in gross mismanagement of the estate.

WHEREFORE, the United States Trustee respectfully requests that this Court enter an order dismissing this case.

December 12, 2024

GERARD R. VETTER
ACTING U.S. TRUSTEE, REGION 4

By: /s/ *Michael T. Freeman*
Michael T. Freeman, Asst. U.S. Trustee
VA Bar No. 65460
Office of the United States Trustee
1725 Duke St., Suite 650
Alexandria, VA 22314
(703) 557-7274- Direct Dial
michael.t.freeman@usdoj.gov

**Certificate of Service**

I hereby certify that on December 12, 2024, I electronically filed the foregoing Motion to Dismiss with the Clerk of the Court and served it via the Court's CM/ECF system upon all counsel who have entered an appearance in the case:

Monique Desiree Almy malmy@crowell.com, monique-almy-7127@ecf.pacerpro.com

Kristen S. Eustis Kristen.S.Eustis@usdoj.gov, Robert.W.Ours@usdoj.gov

Michael T. Freeman michael.t.freeman@usdoj.gov, robert.w.ours@usdoj.gov

Mark Meyer bankruptcy@rosenberg-assoc.com, bankruptcy@rosenberg-assoc.com

U. S. Trustee for Region Four USTPRegion04.DC.ECF@USDOJ.GOV

Maurice Belmont VerStandig mac@mbvesq.com, lisa@mbvesq.com; mac@dcbankruptcy.com; verstandig.mauricer104982@notify.bestcase.com;verstandiglaw@recap.email

14

      I FURTHER CERTIFY that on December 12, 2024, a copy of the Motion was served by first class mail, postage prepaid, to:

Capital One Auto Finance, a division of Capital One, N.A.
c/o AIS Portfolio Services, LLC
4515 N Santa Fe Ave. Dept. APS
Oklahoma City, OK 73118

                              */s/ Robert W. Ours*
                              Robert W. Ours
                              Paralegal Specialist