IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re:<br><br>**COREY BARNETTE,**<br><br>Debtor. | Case No. 24-00111-ELG<br><br>Chapter 11 |

### U.S. TRUSTEE'S REPLY TO DEBTOR'S OPPOSITION TO
### THE MOTION TO DISMISS CHAPTER 11 CASE

Matthew R. Cheney, Acting United States Trustee for Region 4, by counsel, responds to the Opposition to U.S. Trustee's Motion to Dismiss Chapter 11 Case (the "Opposition") (Doc. No. 71) and states:

### Response

The principal factual and legal issues relevant to the U.S. Trustee's motion to dismiss are not in dispute.[1] Mr. Barnette concedes that he is the proprietor of a business engaged in the cultivation of marijuana, and he intends to continue this business through this reorganization case. Obj. at 2, 20. Mr. Barnette also concedes that his business facially violates the federal Controlled Substances Act ("CSA"). *Id.* at 7. Finally, Mr. Barnette does not appear to dispute the well-

---

[1] The motion to dismiss, filed at Docket 66, included an allegation of cause for the failure to file the October 2024 monthly operating report. The debtor filed that report on January 22, 2025, Docket No. 69. The debtor also filed the November and December reports at Docket 70 and 73, respectively. However, the debtor has failed to file reports for January 2025 through May 2025, all of which are past due. The report for June 2025 will become due on July 21st. Additionally, the motion stated that the debtor did not provide documentation regarding cash withdrawals of $95,195 in early 2024. To date, the debtor has not provided any documentation despite requests from the Office of the U.S. Trustee.

Michael T. Freeman
Asst. United States Trustee
Office of the United States Trustee
1725 Duke St., Suite 650
Alexandria, VA 22314
(703) 557-7274- Direct Dial
(202) 934-4174 – Office Cell
michael.t.freeman@usdoj.gov

1

established principle that federal bankruptcy law cannot be used to reorganize or manage the proceeds of a business engaged in criminal activity. *Id.* at 23 ("Assuredly, if an individual engaged in the ongoing trafficking of heroin were to seek bankruptcy protection, myriad equitable concerns would almost assuredly constitute 'cause' for dismissal").

Instead, Mr. Barnette's Opposition rests primarily on the assertion that the CSA itself is no longer valid law in the District of Columbia, at least with respect to marijuana, as the result of legislation passed by the District of Columbia City Council pursuant to the powers delegated to it under the District of Columbia Home Rule Act, Pub. L. No. 93-198, 87 Stat. 774 (the "Home Rule Act"). *Id.* at 7.

In so arguing, Mr. Barnette overlooks an important limitation written into the Home Rule Act itself. Although the District of Columbia may legislate on internal matters pursuant to the authority delegated to it by Congress, the Home Rule Act prohibits it from rescinding or modifying any Congressional enactment that is applicable nationally—such as the CSA. *See* D.C. Code § 1–206.02(a)(3) (District of Columbia City Council may not "[e]nact any act, or enact any act to amend or repeal any Act of Congress … which is not restricted in its application exclusively in or to the District"). *See McConnell v. United States,* 537 A.2d 211, 213–14 (D.C. 1988) ("although the Council ... may repeal a congressionally-enacted statute limited in application to the District of Columbia, the Council may not repeal a federal statute of broader application").

This prohibition applies even where the purported effects of the conflicting District of Columbia legislation would be limited to activities occurring within the District. *See Brizill v. D.C. Bd. of Elections & Ethics*, 911 A.2d 1212, 1215–16 (D.C. 2006). In *Brizill*, the District of Columbia Court of Appeals held that the District lacked authority to approve a ballot initiative legalizing video lottery gaming because that initiative would conflict with the Johnson Act, a

2

federal law prohibiting the use of gambling devices in the District of Columbia and certain other jurisdictions. *See* 15 U.S.C. §§ 1171-1189 (2006). This was so even though the proposed initiative would have only had effect within the District of Columbia. *Brizill*, 911 A.2d at 1215. Rather, because the Johnson Act "does not apply exclusively to the District, neither the Council nor the voters through initiative may amend or repeal this Congressional prohibition on using and possessing gambling devices within the District of Columbia." *Id.* at 1216. The same reasoning applies to Congress's prohibition of the cultivation of marijuana under the CSA.

In any event, Mr. Barnette cannot identify a single decision in which a local law of the District of Columbia was found to rescind or supersede a federal criminal law of general applicability. Although Mr. Barnette relies on a pair of tax cases, *United States v. Saidman*, 231 F.2d 503 (D.C. Cir. 1956) and *In re WPG, Inc.*, 282 B.R. 66 (D.D.C. 2002), in support of his argument that the local legislation may create an exception to federal law, *id.* at 5-6, neither of those cases involved criminal statutes, and both involved conflicting Congressional enactments, rather than a conflict between a Congressional enactment and city council legislation. *See WPG*, 292 B.R. at 69 (holding that District of Columbia tax law took precedence over older federal statute on grounds that it was a re-enactment of a Congressional statute). Nor is there any basis to treat the Home Rule Act as an implied repeal of the CSA. Rather, as the Supreme Court has cautioned, repeals by implication are disfavored, and subsequent legislation will not be presumed to suspend older legislation unless such an intent is clearly expressed. *See Epic Sys. Corp. v. Lewis,* 584 U.S. 497, 510–11 (2018) (noting that it is the "job of Congress by legislation, not this Court by supposition, both to write the laws and to repeal them").

But even if the City Council's legislation regarding marijuana were "legally indistinct from acts of Congress itself," as Mr. Barnette suggests, *see* Obj. at 10, the result would be no different.

3

"When Congress acts as the local legislature for the District of Columbia and enacts legislation applicable only to the District of Columbia and tailored to meet specifically local needs, its enactments should—absent evidence of contrary congressional intent—be treated as local law, interacting with federal law <u>as would the laws of the several states</u>." *Dist. Props. Assocs. v. D.C.*, 743 F.2d 21, 27 (D.C. Cir. 1984) (emphasis added). But as the Supreme Court has held, state laws purporting to legalize marijuana do not displace the federal prohibition of marijuana under the CSA. *Gonzales v. Raich*, 545 U.S. 1, 29 (2005). For this reason, even if they were deemed to be Congressional in nature, the District's marijuana laws do not have the effect of rescinding or limiting the CSA.

Alternatively, Mr. Barnette suggests that even if the CSA remains controlling law in the District of Columbia, the U.S. Trustee's motion should be denied under the doctrine of desuetude. Opp. at 15. That doctrine, however, refers to a defense in criminal law to penal statutes of which the respondent lacks fair notice, *see U.S. v. Jones*, 347 F. Supp. 2d 626, 628 (E.D. Wisc. 2004), and has no relevance in a motion to dismiss a bankruptcy case. Furthermore, that the U.S. Trustee would challenge Mr. Barnette's efforts to seek bankruptcy relief cannot have come as a surprise because the U.S. Trustee Program has consistently sought dismissal of bankruptcy cases that seek to reorganize marijuana businesses or that would require administration of marijuana-related assets. *See, e.g., In re Arenas*, 535 B.R. 845 (B.A.P. 10th Cir. 2015); *In re Johnson*, 532 B.R. 53 (Bankr. W.D. Mich. 2015); *In re Basrah Custom Design, Inc.*, 600 B.R. 368, 379 (Bankr. E.D. Mich. 2019); Clifford J. White III and John Sheahan, *Why Marijuana Assets May Not Be Administered in Bankruptcy*, XXXVI ABI Journal 12 (December 2017); Gene Kohut, *Barred from Bankruptcy: Struggling Marijuana Businesses Need to Learn Their ABCs*, XXXIX ABI Journal 6 (June 2020) ("Because marijuana is illegal under federal law, U.S. bankruptcy courts, backed by

4

arguments from the Office of the U.S. Trustee, have consistently rebuffed attempts by those in the industry—and even those adjacent to it—to seek bankruptcy relief.").

Mr. Barnette's violation of the CSA is also not excused by the Cole Memo, a former Department of Justice internal guidance memorandum that describes priorities for criminal marijuana enforcement (not civil bankruptcy enforcement) and that was rescinded more than seven years ago. *See* Memorandum from Attorney General Jefferson B. Sessions III to All U.S. Attorneys (Jan. 4, 2018); *see also In re Way To Grow, Inc.*, 597 B.R. 111, 117 n. 24 (Bankr. D. Colo. 2018), *aff'd sub nom. In re Way to Grow, Inc.*, 610 B.R. 338 (D. Colo. 2019). Even while it was in effect, moreover, the Cole Memorandum emphasized that "[t]his memorandum does not alter in any way the Department's authority to enforce federal law. . . [and further] [n]either the guidance herein nor any state or local law provides a legal defense to a violation of federal law, including any civil or criminal violation of the CSA." *See* Memorandum For All United States Attorneys: Guidance Regarding Marijuana Enforcement (Aug. 29, 2013); *see also* Kohut, *supra* p. 4 ("While the U.S. Department of Justice has provided some assurances that it will not prosecute those who produce, distribute or sell marijuana within the regulatory frameworks of states in which marijuana has been legalized, that does not mean that those businesses can take advantage of certain benefits of federal law, such as tax credits or bankruptcy protection."). And contrary to Mr. Barnette's suggestion, federal courts and regulatory agencies have continued to treat marijuana as illegal under federal law. *See, e.g.*, *Fejes v. Federal Aviation Administration*, 98 F.4th 1156, 1163 (9th Cir. 2024) (upholding the FAA's revocation of a pilot's certification because "the DOJ's decision to exercise prosecutorial discretion does not alter marijuana's status—it remains illegal under federal law. . . [S]tate law legalizing marijuana distribution does not negate federal law criminalizing the same action. . . . And marijuana is still illegal in many contexts under federal

5

law, even in states that provide legal allowances."); *United States v. Tolmosoff*, 2024 WL 2114839 (E.D. Cal. May 10, 2024) (Court amended its prior order to clarify that the smell of marijuana, alone, provided probable cause for a search of defendant's car in Yosemite National Park; "because federal law has not decriminalized marijuana and possession of it in any amount remains illegal under federal law, . . . officers operating on federal lands may rely on the odor of marijuana alone for probable cause to search the vehicle on suspicion of federal crimes.")

In any event, the question of whether Mr. Barnette is likely to be criminally prosecuted for his conduct is distinct from the question of whether this Court should be required to oversee and facilitate a violation of federal criminal law. *See In re Rent-Rite Super Kegs W. Ltd.*, 484 B.R. 799, 806 (Bankr. D. Colo. 2012) (explaining that "even if the Debtor is never charged or prosecuted under the CSA, it is conducting operations in the normal course of its business that violate federal criminal law," and "a federal court cannot be asked to enforce the protections of the Bankruptcy Code in aid of a Debtor whose activities constitute a continuing federal crime"). *Cf. CCH Acquisitions, LLC v. J&J&D Holdings, LLC,* No. 2:23-CV-2983, 2025 WL 601249, at *6 (S.D. Ohio Feb. 25, 2025) ("The Court cannot calculate the value of these [marijuana-related] assets without becoming complicit in the parties' illegal agreement.").

Finally, neither the *Callaway* nor the *Hacienda* decisions support Mr. Barnette's Opposition. *See In re Callaway*, 663 B.R. 109 (Bankr. N.D. Cal. 2024); *In re Hacienda Co.,* 647 B.R. 748 (Bankr. C.D. Cal. 2023). To the extent that those decisions hold that a debtor may insulate himself from the consequences of his violation of federal law though the use of an LLC structure, as Mr. Barnette has done here, those cases are wrongly decided. *See Callaway*, 663 B.R. at 117 ("any potential sale of a membership interest in an LLC is just that—the sale of an ownership interest whose rights are bundled in applicable articles of incorporation or operating agreements.

6

It is not necessarily the proceeds of a marijuana business because the LLC is itself engaged in marijuana business."). Potential criminal liability exposure, however, is not constrained or limited by corporate formalities. The Ninth Circuit long ago dispensed with this notion stating that, for purposes of CSA violations, a defendant is in constructive possession of a drug if the defendant exercises dominion and control through shared control with others. *See United States v. Smith*, 962 F.2d 923, 929 (9th Cir. 1992) (citations omitted) ("in the absence of actual possession, constructive possession may be demonstrated if the defendant has the authority to dispose of the drug, either personally or through an agent, or if he is a participant in a joint venture, thereby sharing dominion and control over the drug with the other participants.").

*Callaway* and *Hacienda* are also factually distinguishable because neither case involved a debtor that intended to actively manage an ongoing marijuana business through a chapter 11 plan. In *Callaway*, a chapter 7 case, the bankruptcy court denied the motion to dismiss based on its belief that the trustee could cease the debtor's marijuana operations and thereby avoid administering illegal marijuana assets. *Callaway*, 663 B.R. at 116. And *Hacienda* was predicated on a finding that the debtor's marijuana activities were "passive" and did not rise to a violation of the CSA. *Hacienda*, 647 B.R. at 752. Neither case, however, involved an acknowledged and ongoing violation of the CSA by a chapter 11 debtor in possession of an ongoing marijuana business, as here, and as a result both decisions are distinguishable.

7

WHEREFORE, the United States Trustee respectfully requests that this Court enter an order dismissing this case.

June 25, 2025　　　　　　　　　　　　　MATTHEW R. CHENEY
　　　　　　　　　　　　　　　　　　　　ACTING U.S. TRUSTEE, REGION 4

　　　　　　　　　　　　　　　　　　　　By: */s/ Michael T. Freeman*
　　　　　　　　　　　　　　　　　　　　Michael T. Freeman, Asst. U.S. Trustee
　　　　　　　　　　　　　　　　　　　　VA Bar No. 65460
　　　　　　　　　　　　　　　　　　　　Office of the United States Trustee
　　　　　　　　　　　　　　　　　　　　1725 Duke St., Suite 650
　　　　　　　　　　　　　　　　　　　　Alexandria, VA 22314
　　　　　　　　　　　　　　　　　　　　(703) 557-7274- Direct Dial
　　　　　　　　　　　　　　　　　　　　michael.t.freeman@usdoj.gov

**Certificate of Service**

I hereby certify that on June 25, 2025, I electronically filed the foregoing U.S. Trustee's Reply to Debtor's Opposition to the Motion to Dismiss Chapter 11 Case with the Clerk of the Court and served it via the Court's CM/ECF system upon all counsel who have entered an appearance in the case:

Monique Desiree Almy malmy@crowell.com, monique-almy-7127@ecf.pacerpro.com

Kristen S. Eustis Kristen.S.Eustis@usdoj.gov, Robert.W.Ours@usdoj.gov

Michael T. Freeman michael.t.freeman@usdoj.gov, robert.w.ours@usdoj.gov

Mark Meyer bankruptcy@rosenberg-assoc.com, bankruptcy@rosenberg-assoc.com

U. S. Trustee for Region Four USTPRegion04.DC.ECF@USDOJ.GOV

Maurice Belmont VerStandig mac@mbvesq.com, lisa@mbvesq.com; mac@dcbankruptcy.com; verstandig.mauricer104982@notify.bestcase.com;verstandiglaw@recap.email

8

      I FURTHER CERTIFY that on June 25, 2025, a copy of the U.S. Trustee's Reply to Debtor's Opposition to the Motion to Dismiss Chapter 11 Case was served by first class mail, postage prepaid, to:

Capital One Auto Finance, a division of Capital One, N.A.
c/o AIS Portfolio Services, LLC
4515 N Santa Fe Ave. Dept. APS
Oklahoma City, OK 73118

      */s/ Robert W. Ours*
      Robert W. Ours
      Paralegal Specialist