The order below is hereby signed.

Signed: July 8 2026



Elizabeth L. Gunn
U.S. Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| **In re:** | **Case No. 24-00111-ELG** |
| **Corey Barnette,** **Debtor.** | **Chapter 11** |

## MEMORANDUM OPINION ON MOTION TO DISMISS CHAPTER 11 CASE

Before the Court are the *Motion to Dismiss Chapter 11 Case* (the "Motion") filed by the United States Trustee (the "UST"), the *Opposition* (the "Opposition") filed by Corey Barnette (the "Debtor"), and the UST's *Reply*.[1] Upon consideration of the pleadings, the arguments made at the hearing held on July 2, 2025 (the "Hearing"), the docket herein, and as further set forth in the oral ruling delivered on January 21, 2026, the Court grants the Motion. This Opinion documents the Court's oral ruling granting the Motion, and to the extent that there is any inconsistency or conflict, this Opinion shall control.

### I.      Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This Opinion sets forth the Court's findings of fact

---

[1] *U.S. Tr. Mot. Dismiss Case*, ECF No. 66; *Opp'n to U.S. Tr. Mot. Dismiss Case*, ECF No. 71; *U.S. Tr. Reply to Debtor's Opp'n to Mot. Dismiss Case*, ECF No. 76.

and conclusions of law in accordance with Bankruptcy Rule 7052.[2] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact where appropriate.[3]

## II.    Background

In January 2024, the Debtor, whose ongoing income was derived "from his ownership interest in a licensed marijuana cultivation facility in the District of Columbia," originally filed a voluntary petition for relief under chapter 12 of the Bankruptcy Code.[4] Four months post-petition, the UST filed a motion to dismiss based on the Debtor's derivation of ongoing income from marijuana (at the time and at all times relevant hereto a Schedule I controlled substance under the Controlled Substances Act[5]), prior involvement in a dispensary operation, and substantial debt related to another marijuana business venture.[6] On July 22, 2024, the Debtor proposed a chapter 12 plan of reorganization (the "Chapter 12 Plan").[7] Following an evidentiary hearing held on September 5, 2024, the Court concluded that the Debtor was not an individual involved in a farming operation and was thus ineligible for relief under chapter 12 but afforded the Debtor an opportunity to convert to another chapter.[8]

On October 1, 2024, the Debtor's case was voluntarily converted to a case under subchapter V of chapter 11.[9] On October 9, 2024, the Court entered a *Scheduling Order* that required the

---

[2] Unless specifically indicated otherwise, all section references are to Title 11 of the United States Code (the "Bankruptcy Code"). The Federal Rules of Bankruptcy Procedure shall be referred to as the "Bankruptcy Rules" herein.

[3] Fed. R. Bankr. P. 7052.

[4] *Disclosure Concerning Marijuana Interests*, ECF No. 1, at 9; *Vol. Pet. For Individuals Filing for Bankr.*, ECF No. 1, at 1–7.

[5] 21 U.S.C. § 841 *et seq.*

[6] *U.S. Tr. Mot. Dismiss Chapter 12 Case*, ECF No. 21, at 7–8.

[7] *Chapter 12 Plan of Reorganization*, ECF No. 26.

[8] *Order on Mot. Dismiss Case*, ECF No. 42.

[9] *Order Granting Mot. Convert to Chapter 11 and Elect Subchapter V Designation*, ECF No. 52.

Debtor to, among other things, comply with §§ 1116, 1187, and 1188.[10] The Debtor timely filed his § 1188(c) report  and at the § 1188 status hearing held on October 30, 2024, represented that he intended to file an amended plan consistent with subchapter V by November 8, 2024.[11] At the time of the status hearing, the Debtor also had outstanding document requests from the UST.[12]

On December 12, 2024, the UST filed the Motion.[13] Despite representations to the contrary, as of the date of the filing of the Motion, the Debtor had not filed an amended plan consistent with the requirements of subchapter V. The Motion sets forth four bases for dismissal of the Debtor's case: (1) that the Debtor's business and/or source of income violates federal narcotics law, rendering the Debtor ineligible for bankruptcy relief; (2) that the proceeds of the Debtor's illegal business activities cannot be used to fund a plan; (3) gross mismanagement of the Debtor's estate; and (4) the Debtor's failure to timely file the October 2024 operating report.[14] The original hearing on the Motion was scheduled for January 29, 2025, but was continued by agreement of the UST and Debtor a number of times until finally called before the Court on July 2, 2025.[15]

The Debtor timely filed his Opposition on January 22, 2025.[16] Referencing the contemporaneously filed operating reports for October 2024 (more than two months late) and November 2024 (more than one month late), the Debtor declared that he had "cured" his outstanding obligations, was "actively working" on the December 2024 operating report, and "appreciate[d] the need to file such items in a prompter and more compliant fashion on a go-forward basis."[17]

---

[10] *Scheduling Order*, ECF No. 58.
[11] *Section 1188(c) Report*, ECF No. 60; Hearing Recording at 1:15–2:30, 6:05–6:25, ECF No. 64.
[12] Hearing Recording at 2:35–4:10, ECF No. 64.
[13] *U.S. Tr. Mot. Dismiss Case*, ECF No. 66.
[14] *Id.* at 3.
[15] ECF Nos. 74, 75.
[16] *Opp'n to U.S. Tr. Mot. Dismiss Case*, ECF No. 71.
[17] ECF Nos. 69, 70; *Opp'n to U.S. Tr. Mot. Dismiss Case*, ECF No. 71, at 26.

Somewhat to the Debtor's credit, he filed the December 2024 operating report on January 27, 2025, within a week of its due date.[18] Unfortunately, he then reverted to his previous trend in the case by failing to file both the January 2025 and February 2025 operating reports until June 30, 2025—more than four and three months late, respectively.[19] The Debtor also filed the operating reports for March through May 2025 on June 30, 2025[20] and amended the same on July 2, 2025[21]—not only well after their applicable deadlines but also mere hours prior to the Hearing. At the Hearing, the Debtor offered no defense for the tardy filings. He also acknowledged that he continued to use an Apple Cash account as his primary depository account in violation of the UST's guidelines and that his non-filing spouse was paying his living expenses.[22]

While the Motion was under advisement, the Debtor began filing at least some of his operating reports timely or within a day of the applicable deadline; however, each of the operating reports reflect the Debtor's continued use of the Apple Cash account.[23] Upon review, there are significant discrepancies between the Apple Cash statements appended to the operating reports and the summaries of cash activity contained within the operating reports themselves. For example, the June 2025 operating report Apple Cash statement reflected over $12,200 of transfers in and out of the Debtor's Apple Cash account, but the summary of cash activity contained within the operating report showed total receipts and disbursements of only approximately $8,500.[24] The

---

[18] *Monthly Operating Report for Small Business Under Chapter 11*, ECF No. 73.
[19] ECF Nos. 77, 78.
[20] ECF Nos. 79, 80, 81.
[21] ECF Nos. 84, 82, 83.
[22] U.S. Dep't of Just., Off. of the U.S. Tr., E.D. Va. and D.D.C., Operating Guidelines and Reporting Requirements of the United States Trustees for Chapter 11 Debtors in Possession and Chapter 11 Trustees (Feb. 4, 2026), https://www.justice.gov/ust/ust-regions-r04/file/1533351/dl?inline (requiring a debtor to "immediately close prepetition bank accounts and open new 'debtor in possession' bank accounts . . . approved by the United States Trustee" and admonishing debtors that "[t]he debtor may NOT use any bank accounts other than its disclosed debtor in possession accounts without an order of the court approving the debtor's use of such bank account").
[23] ECF Nos. 87, 88, 90, 92, 94, 95.
[24] *Monthly Operating Report for Small Business Under Chapter 11*, ECF No. 87.

Debtor provided no explanation as to the difference of $3,700. Similar unexplained discrepancies appeared in the operating reports filed for July 2025 ($3,100), August 2025 ($2,800), and October 2025 ($4,900).[25] In addition, several operating reports reflected only de minimis positive cash flow.[26] Furthermore, despite representations to the contrary, no debtor-in-possession account statements for an account allegedly held at Truist Bank were affixed to the operating reports. Perhaps more tellingly, the operating reports show that the Debtor's individual net income is de minimis and in most months not even sufficient to fund the proposed monthly payment of $500 set out in the Chapter 12 Plan. Notably absent from the operating reports is any disclosure of the payments made by his non-filing spouse, despite the substantial benefit conferred on the Debtor through the spouse's payment of all living expenses and the reduction in the Debtor's secured obligations as a result thereof.

Finally, the Debtor's representation that he would file a chapter 11 plan never came to fruition, nor did he seek an extension of the deadline within which to file the same. At the Hearing, the Debtor merely argued that the Chapter 12 Plan was sufficient to meet the requirement of having filed a plan under subchapter V within the 90 days of the petition date.[27] Assuming *arguendo* that assertion is accurate, the Chapter 12 Plan on its face is unconfirmable in the Debtor's converted subchapter V case because it is rife with references to chapter 12 and a disclosure statement and does not include a complete liquidation analysis as required by § 1129(a)(7)(A)(ii).

### III.   Discussion

The Motion lists multiple bases of cause for dismissal, including gross mismanagement of the estate pursuant to § 1112(b)(4)(B) and unexcused failure to timely satisfy reporting

---

[25] ECF Nos. 88, 90, 94.
[26] ECF Nos. 87, 88.
[27] *See* 11 U.S.C. § 1189(b).

requirements pursuant to § 1112(b)(4)(F). The Court's consideration of the question of dismissal is not limited to those set forth in the Motion. In this case, additional bases for a finding of cause exist for the Debtor's failure to comply with a court order under § 1112(b)(4)(E) and failure to timely file or confirm a plan under § 1112(b)(4)(J). In the Debtor's case, the facts are so intertwined that the Court considers each of the alleged forms of cause together in a totality of the circumstances analysis.

### A.      Failure to timely satisfy reporting requirements or comply with a court order

A debtor proceeding under subchapter V has an obligation to file monthly operating reports no later than the 21st day of the following month until the effective date of a confirmed plan of reorganization, the conversion of the case to a case under another chapter, or dismissal.[28] Operating reports "provide necessary information to the Court, creditors, and other parties in interest about the progress and prospects of a debtor's reorganization efforts."[29] Far more than mere busy work, operating reports and the information contained therein have been described as the "life blood" of the chapter 11 process.[30]

Although the Scheduling Order reiterated the Debtor's reporting obligation, and the Opposition reflected the Debtor's understanding of the same, the Debtor repeatedly flouted his duty throughout the pendency of the subchapter V case. Of the eight operating reports that came due between the conversion of the Debtor's case and the Hearing, only one (December 2024) was

---

[28] 11 U.S.C. § 1187(b); Fed. R. Bankr. P. 2015(b).

[29] *In re EarthSnap,* 670 B.R. 49, 54 (Bankr. E.D. Tex. 2025) (quoting *In re Babayoff*, 445 B.R. 64, 81 (Bankr. E.D.N.Y. 2011)); *In re Whetten,* 473 B.R. 380, 384 (Bankr. D. Colo. 2012) ("Without [the monthly operating] reports, the UST and creditors cannot determine when a debtor is incurring additional losses, is rendered administratively insolvent, or is transferring assets without authorization. The reporting requirements provide the primary means for monitoring the debtor's compliance with the Code's requirements and serve as a litmus test for a debtor's ability to reorganize.").

[30] *In re Lashley*, 664 B.R. 408, 415 (Bankr. W.D. Ky. 2024); *Whetten,* 473 B.R. at 383 (quoting *In re Berryhill,* 127 B.R. 427, 433 (Bankr. N.D. Ind. 1991) ("Monthly operating reports are much more than busy work imposed upon a Chapter 11 debtor for no reason other than to require it to do something."); *In re DRTMG*, 667 B.R. 862, 872 (Bankr. S.D. Ohio 2025).

filed within a week of the applicable deadline. The Debtor also filed a flurry of operating reports in the days and hours preceding the Hearing—a practice overwhelmingly disfavored by courts, including this Court.[31] The Debtor, while asking the Court not to dismiss this case, nevertheless failed to offer any defense of or establish any excuse for his tardiness at the Hearing.[32] The Court is not in the habit of dismissing cases solely due to outstanding or tardily filed operating reports, even when cause may be found under either § 1112(b)(4)(E) (failure to comply with a court order) or § 1112(b)(4)(F) (unexcused failure to satisfy timely any filing or reporting requirement). If this were the Debtor's only indiscretion, the result may have been different. However, the Debtor's timeliness issues are only a small portion of his failure to meet the most basic of subchapter V requirements.

### B.     Failure to timely file a plan

A debtor proceeding under subchapter V has 90 days to file a plan.[33] Among other things, the plan must include a liquidation analysis.[34] Failure to include a liquidation analysis has been held to be a failure to comply with § 1189(b)[35] and a debtor who has not filed a complete plan has been found to not be making progress toward confirmation.[36] Assuming for the purposes of this

---

[31] *DRTMG*, 667 B.R. at 873 ("Courts condemn the practice of filing "catch-up" reports where reports for several months are all filed at once."); *Whetten*, 473 B.R. at 383 ("Filing catch-up reports is akin to locking the barn doors after the horses have already gotten out."); *In re Landmark Atl. Hess Farm, LLC*, 448 B.R. 707, 716 (Bankr. D. Md. 2011) ("[C]atch-up monthly operating reports . . . do[] not satisfactorily explain or excuse [a debtor's] failure to satisfy its duties as a chapter 11 debtor.").

[32] While the Court relies upon the contents of the monthly reports filed after the Hearing elsewhere in this Order, the Court limits its analysis in this section solely to those reports due on or before the Hearing.

[33] 11 U.S.C. § 1189(b).

[34] *Id*. § 1190(1)(B).

[35] *Lashley*, 664 B.R. at 416 (quoting *In re United Safety & Alarms, Inc.*, No. 23-14861-SMG, 2024 Bankr. LEXIS 540, at *4 (Bankr. S.D. Fla. Mar. 6, 2024) ("But under the plain text of section 1190(1) — as well as a holistic reading of subchapter V — a 'plan' that fails to include a liquidation analysis and projections fails to satisfy section 1189(b)'s requirement to file a plan within 90 days of the petition date. And under Bankruptcy Code section 1112(b)(4)J), the Debtor's failure to timely file a plan is cause for dismissal or conversion of its case to a chapter 7 liquidation.").

[36] *Id*. at 412 (finding cause under § 1112(b)(4)(J) where ten months had elapsed, and the debtor had made no progress in confirming a plan); *In re Seven Stars on the Hudson Corp.*, 618 B.R. 333, 339 (Bankr. S.D. Fla. 2020) ("Further, Bankruptcy Code section 1112(b)(4)(J) provides that a debtor's failure to file a disclosure statement or to file or confirm a plan within the time fixed by the Bankruptcy Code constitutes cause for dismissal of this case. Likewise, to

Opinion that the Chapter 12 Plan satisfied the Debtor's obligation to file a subchapter V plan within 90 days of the petition date, the Court finds that the Debtor's failure to amend the Chapter 12 Plan into one conforming to and meeting the requirements of subchapter V and failure to progress toward confirmation constitutes sufficient independent cause for conversion or dismissal under § 1112(b)(4)(F) or (J).[37]

> C.      *Gross mismanagement of the estate*

The UST alleges that the Debtor is engaged in gross mismanagement of the estate, pointing in large part to the Debtor's late-filed operating reports as the main evidence in support thereof. While argument at the Hearing focused on the Debtor's actions prior thereto, in ruling on the Motion, the Court considered the Debtor's post-Hearing conduct as well. As of the Hearing, the Debtor was on clear, express notice of the conduct that raised issues in this case, and yet continued acting in the same manner without modification after the Hearing. The continued mismanagement is telling. After the Hearing, the Debtor had a choice: modify his conduct to show compliance with the rigors of subchapter V or continue his "status quo." Unfortunately, he chose the latter. Thus, the Court finds that both the Debtor's pre- and post-Hearing conduct are relevant for the consideration of gross mismanagement of the estate.

Gross mismanagement of the estate under § 1112(b)(4)(B) includes a debtor's failure to file timely, complete, and accurate operating reports "where that failure results in a materially inaccurate financial picture or where other acts in violation of the Code are hidden."[38] Because the

---

confirm a Chapter 11 plan — even one under new Subchapter V — both the plan and the plan proponent must comply with the applicable provisions of the Bankruptcy Code.").

[37] The Court's oral ruling encompassed not only prior to the Hearing but also the period between the Hearing and the January decision. For clarity, the Court finds that the delay between the conversion and the Hearing would be more than sufficient to support the finding, and any reference to the post-Hearing timeframe further shows a lack of forward progress by a Debtor who is enjoying the benefits but not enduring any of the burdens of the Bankruptcy Code.

[38] 11 U.S.C. § 1112(b)(4)(B); *DRTMG*, 667 B.R. at 875.

operating reports are signed under penalty of perjury, the Court may rely on the information therein as evidence towards a debtor's management of their estate.[39] The operating reports in this case reflect that the Debtor relied upon Apple Cash, an unauthorized depository institution, for the entirety of his case without obtaining a waiver of the UST's guidelines.[40] Beyond the mere use of Apple Cash, the transfers into and out of the unauthorized account differ significantly from the cash activity summaries contained within the operating reports. As a result, the Debtor has failed to provide sufficient explanation for the discrepancies or the use of no less than $15,000 of unreported cash.

The Debtor's financial indiscretions are not limited to the use of Apple Cash. While the Debtor indicated he had opened a debtor-in-possession account, there are no bank statements from any debtor-in-possession account affixed to any operating report. The Debtor's choice, despite being on notice of reporting and debtor-in-possession account requirements, to work through cash or Apple Cash calls into question the usefulness or validity of his operating reports. Also noticeably absent from the Debtor's reporting is any accounting or disclosure of the support, including payments toward secured obligations, received from his spouse. The complete disregard for debtor-in-possession requirements, despite being on notice before and after the Hearing, causes the Court to question whether the Debtor ever actually intended to comply with the rigors of subchapter V or the Bankruptcy Code. When combined with the unaccounted-for minimum of $15,000 of cash, the Debtor's failure to manage the estate within the rigors of the Bankruptcy Code is sufficient to find cause to convert or dismiss the Debtor's case under § 1112(b)(4)(B).

---

[39] *Bank of America, N.A. v. CD-04, Inc. (In re Owner Mgmt. Serv. LLC)*, 530 B.R. 711, 720–21 (Bankr. C.D. Cal. 2015).
[40] *See e.g.*, ECF Nos. 69, 95.

### D.    No unusual circumstances

As set forth *supra* and based upon a totality of the circumstances, cause exists to convert or dismiss the Debtor's case. Upon the finding of cause, the burden shifts to the Debtor to demonstrate the existence of unusual circumstances to justify the continuation of the case.[41] Although "unusual circumstances" is not defined within the Bankruptcy Code, courts have held that the phrase "contemplates conditions that are not common in chapter 11 cases."[42] Here, the Debtor offered little, if any, reasonable justification for his tardiness in filing the operating reports, failure to utilize a debtor-in-possession account, continued use of Apple Cash, the missing $15,000, failure to disclose financial support, and failure to file a subchapter V plan. The Debtor's conduct is that of one happy to enjoy the benefits and protections of the Bankruptcy Code without showing any good faith effort to meet even the most minimal (but not trivial) requirements of a debtor in possession. Based upon the evidence introduced at the Hearing, the Court finds that the Debtor has not met his evidentiary burden to show unusual circumstances.[43]

### E.    Alternative arguments; conversion or dismissal

While under advisement, the Court considered the alternative arguments raised in the Motion but based on the foregoing, finds that there is more than sufficient cause to grant the Motion for cause as elaborated on herein without the need to reach the alternative arguments. The sole question that remains is whether the Court should convert or dismiss the Debtor's case. The Court is guided by the language of § 1112(b)(1) to do "whichever is in the best interests of creditors and

---

[41] 11 U.S.C. § 1112(b)(2).
[42] *Whetten,* 473 B.R. at 384 (quoting *In re Prods. Int'l Co.,* 395 B.R. 101, 109 (Bankr. D. Ariz. 2008)); *see also Earthsnap,* 670 B.R. at 59 (declining to find unusual circumstances where a debtor failed to comply with reporting requirements from the outset of the case and other chapter 11 requirements despite having had ample time to do so).
[43] *DRTMG*, 667 B.R. at 871; *In re Ghaffari,* No. 24-10453, 2025 Bankr. LEXIS 666, at *25–26 (Bankr. D.N.M. Mar. 19, 2025).

the estate."[44] Upon a review of the facts and circumstances, and being especially mindful of the potential legal risk to a chapter 7 trustee tasked with administration of this Debtor's estate, the Debtor's paucity of assets other than potential litigation recoveries, and the *de minimis* income of the estate during the pendency of the case, the Court finds that dismissal is the appropriate remedy.

### IV. Conclusion

Therefore, for the reasons set forth in this Opinion, the Motion is **GRANTED** and the Debtor's case is **DISMISSED**.

[Signed and dated above.]

Copies to: Debtor; recipients of electronic filing

---

[44] 11 U.S.C. § 1112(b)(1).